NEW-YORK,
May, 1810.

KETCHAM and
BLACK
v.
CLARK.

## KETCHAM and BLACK *against* CLARK.

Where a partnership between A. and B. expired by its own limitation, on the 1st of *May*, 1807, and on the 22d *June*, 1807, A. executed an assignment of all his right, &c. in the copartnership stock, &c. to B. and on the 30th *June*, 1807, B. accepted a draft THIS cause came before the court, on a writ of error, from the court of common pleas of *Dutchess* county. The plaintiffs in error declared, as partners in trade, under the firm of *Israel Ketcham and Co.* against the defendant in error, in the court below, for goods sold and delivered, money paid, &c. money lent, &c.; and on an *insimul computassent.*

The defendant pleaded *non assumpsit*, with notice of set-off.

on the copartnership, in the name of the firm; it was held, that both partners were bound by the acceptance; there being no evidence of any public notice of the dissolution of the partnership, nor any special notice of its dissolution to the party dealing with the firm.

The plaintiffs proved their demand for goods sold and delivered, to the. amount of 256 dollars and 81 cents. The defendant offered in evidence, by way of set-off, a draft on *Israel Ketcham and Co.* signed by *Kellog Mollan,* dated 27th *June,* 1807, in favour of the defendant, for 190 dollars and 41 cents, on which there was a written acceptance, as follows :

" *Kingston,* 31st *June,* 1807;

" Accepted to be set off against *John G. Clark's* private account.

(Signed) " DAVID BLACK,
" *For Israel Ketcham and Co.*"

It appeared in evidence, that the articles of copartnership between the plaintiffs, were signed the 3d *November,* 1806, by which the duration of the partnership was limited to the 1st *May,* 1807 ; and it was agreed, that, if on the 1st *May,* 1807, the parties concluded to, continue the business, each partner was to add to the stock, in cash, 2,500 dollars ; but if it was thought best to close the concern, the goods on hand were to be sold, &c. During the spring of 1807, no money was advanced by either partner, and they continued selling the stock, and collecting the outstanding debts, until the 22d *June,* 1807 ; on which day *Israel Ketcham,* one of the plaintiffs, executed an assignment to *G.* and *I. Ketcham* of all his right in the partnership property and debts, as collateral security for the demand they had against him ; and, at the same time, he also assigned to them a bond of *Black,* as further security ; and a judgment having been entered up on the bond, the partnership property was taken in execution, on the 26th *June,* 1807, but the property was left in the possession of the plaintiffs, by the sheriff, and not removed ; and on the 30th *June* the order above mentioned was presented and accepted.

The plaintiffs' counsel objected to the evidence of the set-off of the acceptance ; but the court overruled the objection, and gave judgment for the plaintiff, for 7

VOL. VI. T

NEW-YORK,
May, 1810.

KETCHAM and
BLACK
v.
CLARK.

NEW-YORK,
May, 1810.

KETCHAM and
BLACK
v.
CLARK.

dollars and 86 cents, after allowing the amount of the acceptance, and 59 dollars and 50 cents, admitted by the plaintiff. A bill of exceptions was tendered and sign= ed, on which the writ of error was brought.

*Hawkins,* for the plaintiffs in error, contended, that there was a dissolution of the partnership of *Ketcham* and *Black,* on the 1st *May,* 1807, by express limita- tion ; or, at least, that an end was put to the partnership by the assignment of the 22d of *June,* 1807. And that if the partnership was dissolved, then the acceptance afterwards, on the 30th *June,* could not bind the part- nership. He cited *Cowp.* 449. 3 *Johns. Rep.* 536. 4 *Johns. Rep.* 224.

*Sudam,* contra, insisted, that the acceptance was spe= cial, and that the amount was to be passed to the credit of *Clark.* It was not an acceptance that could be trans- ferred or appropriated to any other purpose than the one expressed. It was no more than a receipt for so much money on account ; which *Black* was competent to give, and which was binding on the partners. He did not deny the principles of the law of partnership, but he contended that they did not affect this case. The defendant had a right to insist on the entry to his credit, of the amount of the acceptance, in the books of *Ketch- am* and *Black.* The sheriff could not, under the exe= cution, seize the books of account of the copartner- ship.

VAN NESS, J. delivered the opinion of the court. The question is, whether *Black* had not authority to bind his copartner, when he accepted the order of the 30th of *June.* That acceptance was binding, if *Clark,* who took it, was not chargeable with notice, either ex- press or constructive, of the dissolution of the partner- ship. The order was drawn upon the firm by a house which had formerly sold goods to the firm, and it was

drawn in favour of a person who had also previously dealt with it. By the terms of the articles of copartnership, the partnership had ceased on the 1st of *May* preceding; but no notice of this dissolution appears to have been given, either to the public at large, or, particularly, to either of the parties to the order in question. The order was accepted by *Black*, for and in behalf of the house of *Ketcham and Co.* and though this acceptance was a new contract; yet, until notice of the dissolution was given, each partner was still competent to bind the firm to all persons not chargeable with notice of such dissolution.

In the present case, there was not only the want of notice, but the partners continued to carry on business, in a manner calculated to induce the public to believe the partnership was still subsisting. They continued together, selling the stock on hand, and collecting the outstanding debts, between the 1st of *May* and the 22d of *June*, 1807. On that day one of the copartners assigned over all his share of the partnership stock to third persons; and this act was, of itself, a termination of the partnership. But there is no evidence that the knowledge of this act, between that day and the 30th of *June*, went beyond the persons concerned in it, or that it reached the parties to the order in question, who had formerly been dealers with the firm.

It has not been settled, by any decision in this court, when a partnership is to be dissolved, so as to bind the copartnership by a new contract. In the case of *Lansing* v. *Gaine and Ten Eyck*, (2 *Johns. Rep.* 304.) it was intimated that notice must be given according to the rule in the *English* law; but this was not a turning point in that case. In *England*, it seems to be necessary, that the notice should be given in a particular newspaper, viz. *The London Gazette;* but we have no such usage or rule here. I think, however, we ought, at least, to go so far as to say, that public notice must be given in a newspaper of the city or county where the

partnership business was carried on; or in some other way public notice of the dissolution must be given. The reasonableness of it may, perhaps, become a question of fact in the particular case; but public notice, in some reasonable and sufficient manner, must be given, and that will conclude all persons who have had no previous dealings with the firm; or if actual knowledge of the dissolution is, without such notice, brought home to the person dealing with the firm, such knowledge may be sufficient to conclude him. But as to persons in the habit of dealing with the firm, public notice is not sufficient by the *English* law. The notice must be specially communicated to such individuals. These rules have been frequently and solemnly laid down, as part of the mercantile law of *England*, on this subject. (*Graham* v. *Thompson*, *Peake*, 42. *Godfrey* v. *Turnbull and Macauley*, 1 *Esp. Cas.* 371. *Graham* v. *Hope*, *Peake*, 154. *Parkin* v. *Carruthers*, 3 *Esp. Cas.* 248. *Minnit* v. *Whitney*, 16 *Vin.* 244. *pl.* 12.) The necessity and justice of these rules call loudly for their sanction by this court, for, as Lord *Kenyon* observes, in one of the cases, " It would be the hardest measure imaginable upon the creditor, were the law otherwise; for while he supposed he was giving credit to a man having sufficient to satisfy the whole of his demand, he might be trusting a beggar."

Upon these principles there can be no doubt but that both the copartners were bound by the acceptance. Here does not appear to have been any public notice given of the termination of the partnership; and much less any special notice to the defendant, who had before dealt with the firm, and who, no doubt, took the acceptance as a valid and *bonâ fide* contract, binding upon both the plaintiffs.

We are, therefore, of opinion, that the judgment below ought to be affirmed.

Judgment affirmed.