## John Zollar v. Edwin Janvrin.

Where evidence has been received, and upon doubts of its competency being expressed by the court, the party offering it says he will withdraw it, and no objection is made by the judge, it will be taken to be withdrawn with his assent, and the verdict will not, ordinarily, be disturbed.

A person accustomed to deal with a trading firm will hold a retiring partner for a debt contracted after such retirement, unless such person had actual notice of it, or was put upon inquiry.

Notice in the gazette is not notice to a person accustomed to deal with the firm, unless brought to his knowledge; and even if he be in the habit of taking the same gazette it is not notice as matter of law.

Nor will the registry of a mortgage by the remaining member of the firm to the retiring partner, even of goods like those of the firm, or even if brought to the knowledge of the creditor, put him, as matter of law, upon inquiry.

The fact that the creditor had the means of knowledge, and with reasonable diligence might have ascertained the dissolution, will not charge him, unless the circumstances were such as to put him upon inquiry.

ASSUMPSIT, for beef sold at different times after Sept. 28, 1865, and before February, 1866, to L. C. Paul & Co., in which firm plaintiff alleged that defendant Janvrin was a partner.

The writ was not served upon, and there was no appearance for Paul. The beef was delivered to Paul, and one ground of defence was that Janvrin was not a partner when the beef was sold by plaintiff.

In the spring of 1865, Paul and Janvrin formed a partnership, in Boston, under the name of L. C. Paul & Co., in the business of buying and selling meat at a stall in a market—Paul residing in Boston and doing most, or all, of the business, and Janvrin living in New Hampshire, and being engaged but little, if at all, in the personal management of the business in Boston.

Before Sept. 28, plaintiff, who was a Brighton butcher, had frequently sold beef to L. C. Paul & Co., delivering it to L. C. Paul, knowing him to be a member of the firm.

There was evidence tending to show that on the 28th day of September, Janvrin sold his interest in the partnership property to Paul, took a mortgage upon the property to secure the note given by Paul to Janvrin, which mortgage was recorded—that Paul and Janvrin dissolved their partnership and caused notice of the dissolution to be published in the Boston Post—that it was understood by them that Paul would continue the same business at the same place under the name of L. C. Paul & Co.,—the defendant having no interest or responsibility in the business.

Two questions submitted to the jury, were, whether plaintiff sold the beef after Sept. 28, believing that defendant was a partner and on his credit, and whether plaintiff had notice of a dissolution of the partnership.

Plaintiff's counsel, in opening, stated that he should prove that defendants were co-partners, and, among other things, that the names of Paul and Janvrin appeared as partners in the Boston Directory, and that plaintiff learned from other persons that Janvrin was, and that Paul

was not, responsible. Subject to defendant's exception, plaintiff testified upon direct examination that a book produced by his counsel, was the Boston Directory, but that he did not know, before he sold the beef for which this suit is brought, who appeared, in the directory, to be members of the firm of L. C. Paul & Co. The directory was not introduced in evidence.

One North, a witness called by plaintiff, testified, on direct examination, subject to defendant's exception, that he had been selling goods to L. C. Paul & Co., for cash, till the last of May or June, when Paul wanted to buy on credit; that he, North, inquired of the commercial agency. At this point defendant objected that it did not appear that this was brought to the knowledge of plaintiff. Plaintiff's counsel thereupon undertook that he would show that it was brought to plaintiff's knowledge, and subject to defendant's exception, the witness testified as follows : "I inquired of the commercial agency about the credit of Paul and Janvrin, and learned that Paul's credit was bad and defendant's good, and I sold goods to them on that credit till January, 1866. I presume I told plaintiff that Janvrin was good. I told other beef-dealers, and presume I told plaintiff. I think I inquired of plaintiff about their credit. My impression that I told plaintiff is derived from the fact that plaintiff often inquires about the credit of parties."

The court suggested that it might be doubtful if this evidence was competent, whereupon plaintiff's counsel said he would consider it out of the case. Defendant objected to the whole course taken in regard to this evidence and the Boston Directory.

Janvrin's counsel, in opening, stated that Janvrin was a partner with Paul from the spring of 1865 to Sept. 28, 1865, and that their partnership was dissolved Sept. 28, 1865.

Defendant requested the court to instruct the jury that if plaintiff and Janvrin were equally innocent, and plaintiff was more negligent in not ascertaining the dissolution, than Janvrin was in giving notice, the loss must fall on plaintiff; that if plaintiff had the means of knowledge, and, in the exercise of reasonable diligence, might have ascertained the dissolution, he cannot recover.

The court declined so to instruct the jury, but did instruct them as follows :

If there was a dissolution Sept. 28, and if plaintiff did not know or believe that Janvrin was a partner, he cannot recover.

If there was a dissolution Sept. 28, and if plaintiff knew or believed that Janvrin was a partner before that time, and if plaintiff had notice or knowledge of the dissolution, or was put upon inquiry about it, and by reasonable inquiry would have learned of the dissolution, (which is the same as actual notice,) then plaintiff cannot recover for beef sold after such notice, or knowledge, or being put on inquiry.

If there was no dissolution, or if Janvrin allowed Paul to hold him, (Janvrin,) out to the world as a partner after the dissolution, the plaintiff could recover.

If there was a dissolution Sept. 28, and if plaintiff was an old customer, (i. e., had sold beef to the firm before that time,) and if plain-

tiff believed that Janvrin continued to be a partner after that time, and gave credit to the firm on that account, and if plaintiff had no actual notice or knowledge of the dissolution, and was not put upon inquiry as to it, he could recover, and, in such case, the notice in the Post, and the record of the mortgage, were not notice, and did not, as mere matter of law, put plaintiff on 'inquiry, and were not evidence tending to show that plaintiff had notice or knowledge or was put on inquiry, unless he had some knowledge or information about them, or unless his attention was in fact called to them.

The mortgage, if known to plaintiff, was not notice, as mere matter of law. If the plaintiff had any knowledge of the mortgage, it was a question of fact for the jury, whether that should have put plaintiff on inquiry.

The burden of proof, as to plaintiff having no notice or knowledge, or not being put upon inquiry, is on plaintiff.

Defendant excepted to the instructions given and to the refusal to give those requested, and moved to set aside the verdict, which was for plaintiff.

*Mace & Hatch,* for plaintiff.

*Wood & Bell,* for defendant.

BELLOWS, J.   We see nothing in the opening of the plaintiff's counsel that ought to disturb the verdict.   If statements had been made by the counsel fraudulently, knowing that no proof could be offered in their support, and they were of a character likely to 'injure materially the defendant, even after instructions to the jury to disregard them, the judge, who tried the cause, might be justified, in a strong case, in setting aside the verdict.   It would stand, indeed, upon much the same footing as statements of fact made by counsel in a closing argument to the jury, which have been held when they were made against the exception of the other party to be cause for setting aside a verdict.   *Tucker* v. *Henniker,* 41 N. H. 316.

In the case before us, however, it does not appear that the opening statements were fraudulently made, or that exception was taken to them during the trial, nor can the court see that they were calculated to injure the defendant.   The testimony of North seems to have been withdrawn upon the suggestion of the court, that its competency was doubtful, and it is to be assumed from the case that it was withdrawn with the judge's permission.   If so, it is not a cause for disturbing the verdict, for it is well settled that it is competent for the judge in his discretion to strike out evidence that has been improperly admitted, upon giving proper instructions to the jury ; and as no complaint is made on that score, it is to be presumed that the proper instructions were given.   In *The Judge of Probate* v. *Stone,* 44 N. H. 606, evidence was ruled out after the arguments of counsel and the charge to the jury, and held to be within the discretion of the judge.

We think there was no error in declining to give the instructions

prayed for.   One branch of the request was, that if the parties were equally innocent, and plaintiff was more negligent in not ascertaining the dissolution of the partnership, than Janvrin was in giving notice, the loss must fall on the plaintiff.   On this point the instructions were, that if the plaintiff was in the habit of dealing with the firm before the dissolution, and had no actual knowledge of the dissolution, and was not put upon inquiry in regard to it, but believed Janvrin still to be a partner, he could recover.

This, we think, was entirely correct; and the doctrine is well settled in respect to persons in the habit of dealing with a firm that actual knowledge must be brought home to them; at least, that the credit was under circumstances from which actual notice might be inferred.   3 Kent's Com. sec. 67, and cases cited; Story on Part. sec. 161; *Graves & al.* v. *Murray & al.*, 7 Cow. 701.

In *Graham & al.* v. *Hope & al.*, Peake N. P. case 154, it was laid down by Lord Kenyon, that it was incumbent on persons dissolving a partnership, to send notice of such dissolution to all the persons with whom they had had dealings in partnership.   See, also, cases cited in note to that case.   So is *Ketchum & al.* v. *Clark*, 6 Johns. 144, and cases cited; *Vernon* v. *The Manhattan Co.*, 17 Wend. 528, and cases cited.

The instructions given in the case before us, that there must be actual notice, or the plaintiff must have been put upon inquiry, accords, we think, with the authorities; and we think the court was right in declining to instruct the jury that the plaintiff's right to recover would depend upon the inquiry whether the plaintiff was more negligent in not ascertaining the dissolution, than was Janvrin in giving notice.   Such a comparison would, we think, be likely to confuse and mislead a jury; and besides the case does not in any sense turn upon it, the real inquiry being whether plaintiff had actual notice, or had such information as made it his duty to make further inquiries; and such was the view taken by the judge who tried the cause.

In respect to the other branch of the request, viz., that if plaintiff had the means of knowledge, and in the exercise of reasonable diligence might have ascertained the dissolution, he cannot recover, it may be admitted that if this is understood with the qualification that plaintiff was also put upon inquiry, it would be correct; and in such case it would accord substantially with the instructions actually given, and no exception would lie. . If it is to be understood without this qualification the court did right in declining so to instruct the jury, because it is obvious that plaintiff might have had ample means, and might readily have ascertained the fact, and still might not have been put upon inquiry, or, in other words, nothing might have appeared to call reasonably for such an inquiry.

We think, therefore, that there was no error in declining to instruct the jury in the terms requested.   Nor do we think that the notice in the Post was in law notice to the plaintiff, nor did it put him upon inquiry, unless it was brought to his knowledge.   This was so held in *Graham & al.* v. *Hope & al.*, Peake's Cases, 154, before cited; *Ketchum & al.*

v. *Clark*, 6 Johns. 148 ; *Graves & al.* v. *Murray & al.*, 6 Cow. 701 ; 3 Kent's Com. sec. 67 ; Story on Partnership sec. 161. From these cases it appears that circulars ought regularly to be sent to all the persons accustomed to deal with the firm, and also that it is not sufficient, as matter of law, that a creditor was accustomed to take the gazette containing such notice.

The charge that the record of the mortgage was not, as matter of law, notice, was correct. In any question involving the title to the property mortgaged, a proper record of a mortgage duly executed would be constructive and conclusive notice to subsequent purchasers, because it would be their duty to look to the registry and see if there were prior conveyances. *Tripe* v. *Marcy*, 39 N. H. 439. No such duty, however, rested upon the plaintiff here. The law did not require that the retirement of Janvrin from the firm should be registered, and there could be no obligation upon a creditor to look for a record ; and consequently such a record is not constructive notice.

If the plaintiff had seen, or been informed of, a conveyance that stated the fact of the dissolution, it would have put him upon inquiry, although no such record was required by law. *Hastings* v. *Cutter*, 24 N. H. 481.

The knowledge of a record, however, of a mortgage by Paul to Janvrin of personal property, even if the property corresponded to the stock of goods in the store of the firm, would not in law be notice, but only evidence proper to be considered by the jury, and we perceive no error in the instructions upon that subject.

There must, therefore, be

*Judgment on the verdict.*

[DOE, J., dissented in respect to the withdrawal of evidence.]