BENJAMIN F. SMITH, IMPL'D ETC., *et al.*

*v.*

A. C. VANDERBURG.

1. PRACTICE—*court may amend record of cause after judgment and during term.* During the term of court at which a judgment is entered, the court, of its own motion, may afterwards, make such amendments of the record of the cause, as it may think proper, and the justice of the case requires.

2. PARTNERSHIP—*interpretation of a particular agreement.* A & B of the one part, and C. D. E. & F. of the other, made an agreement in writing, whereby A & B sold to C the exclusive right to manufacture and sell a certain article secured by letters patent, together with all the stock and fixtures then on hand pertaining to the business, in consideration that thirty-seven and one-half per cent. of the net profits realized should be paid to them ; and in order that profits might arise out of it, D E & F were to furnish $15,000 as capital for carrying on the same; A & B agreeing that they would neither make nor sell the said article, nor in anywise interfere with the management of the business, which was agreed should be left exclusively with C as superintendent, who was to receive a certain stipulated compensation for his services, the party of the second part guaranteeing to A & B the payment of said per cent., after all expenses should be paid, such expenses to include 20 per cent. on the capital furnished by D E & F , to be paid to them for the use of the money, and which capital it was agreed they might at any time withdraw, with the consent of C. *Held,* that this agreement did not constitute a partnership between A & B and the other parties.

3. SAME—*conceding one existed—rights and liabilities of the parties between themselves and as to third persons.* Conceding a partnership to have existed, the withdrawal of the capital furnished, with the consent of C effected a dissolution of the firm. D. E & F could not be held liable on a note executed by C as superintendent of the concern, ten days after they had with C's consent, withdrawn

the capital paid in by them; under the agreement, the giving of a note was not within the scope of his authority.

4. The person receiving such note, having inspected this agreement prior to taking it, was chargeable with notice that C was thereby acting without authority, and also, of the dissolution of the firm, by putting him on inquiry as to it.

5. To charge the parties so withdrawing from the concern, with the payment of the note, it must be shown, that the funds received, for which the note was given, were used in payment of the firm debts, incurred prior to their retirement.

6. If the partnership were not dissolved by the withdrawal of the capital, the fact, that C at the time of the execution of the note, also executed to the same party a bill of sale of all the property belonging to the concern and of which he took immediate possession, worked a dissolution of the firm.

7. If these parties were to be held liable on such note, they would be entitled to a credit thereon to the amount of the real value of the assets conveyed by C.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The opinion states the case.

Messrs. FULLER & SHEPARD, for the appellants.

Mr. J. S. WOLFE and Messrs. HERVEY, ANTHONY & GALT, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit brought in the Recorder's court of the city of Chicago, by Abram C. Vanderburg against Benjamin F. Smith and others, partners under the firm name of "Morrell Electro Magnetic Fluid Company." Benjamin F. Smith was alone served with process.

The declaration counted upon a promissory note, alleged to have been executed by Benjamin F. Smith and the others named, "partners, etc.," under the firm name as above stated.

The note bore date April 19, 1866, and was signed "Morrell Electro Magnetic Fluid Company, John E. Cone, Superintendent," and was payable sixty days after date, with use.

The common money counts were added, and counts for goods, wares and merchandise sold and delivered, and for the labor, care and diligence of the plaintiff, bestowed in and about the business of the defendants at their request.

Smith pleaded, verifying his plea by affidavit, that he was not, at the date of the note, a partner of Morrell, Farrar, Linscott, Lake and Cone, and was not jointly liable with them as partners in the supposed promises and undertakings. He also pleaded the general issue, and on a change of venue to the Circuit Court, the cause was tried on these issues by the court, without a jury, and a verdict for the plaintiff. A motion for a new trial having been overruled, judgment was entered on the verdict, to reverse which the defendant Smith appeals to this court.

It appears by the record, that the judgment was entered, originally, against all the defendants, but at a subsequent day of the same term, on motion of the plaintiff, the record of the entry of the judgment was so amended as to make it a judgment against Smith alone, impleaded with the others named.

Exception was taken to this by the defendant Smith, but we can perceive no error in the action of the court thus had at the term at which the proceedings occurred. During the term, the record of every cause is in the breast of the court, and such amendments can be made by the court on its own motion, after inspection thereof, as justice and the right of the case may seem to require. This is a familiar principle.

The principal question raised upon the record is, was there a partnership between the parties alleged to be such, at the time the note was executed?

The evidence to establish the fact of partnership, consists chiefly in the following instrument introduced on the trial:

"This agreement made this fifteenth day of February, 1866, by and between J. A. Morrell and W. W. Lake, of the city of Chicago, of first part, and J. E. Cone, A. N. Linscott, B. F. Smith and H. W. Farrar, of second part, witnesseth, that in consideration that said Linscott, Smith and Farrar shall furnish the sum of fifteen thousand dollars as capital for the business of manufacturing and sale of 'Morrell's Electro Magnetic Fluid,' to the satisfaction of said Cone, who shall have the sole and exclusive charge and management of said business, and an annual salary of three thousand dollars, to be charged to expense account of said business, together with twenty-five per centum of net profits arising from same, and the further consideration that the said party shall pay or cause to be paid to the party of the first part, thirty-seven and one-half per cent. of the proceeds of said business after all expenses and charges are paid. Said party of first part hereby grant and convey unto J. E. Cone, the sole and exclusive right to make and sell the said fluid, during the continuance of this agreement. And said party of first part covenant and agree with party of second part to neither make nor sell said article, nor in any manner interfere with the making or selling the same, nor with the management of said business; they further covenant and agree, jointly and individually, that if called upon by said Cone for that purpose, to compound the said fluid at such reasonable salary as may be agreed upon, or in default thereof, the said Cone may compound the same or procure the same to be compounded, after the sealed formula placed in his hands, which we further covenant and agree is the genuine recipe or formula for the compounding the concentrated fluid which is put up for sale, one equivalent in bulk to nineteen equivalents of pure water; party of first part, in consideration, as aforesaid, grant and convey unto said Cone all stock and fixtures on hand pertaining to said business.

" Said party of second part, hereby covenant and agree with party of first part that Col. J. E. Cone shall have the superin-

tendence of said business, that they will pay party of first part said thirty-seven and one-half per cent. of profits, after expenses are all paid, which expenses shall include twenty per cent. per annum on the amount of cash capital actually paid in and used in said business. And party of second part further covenant that said capital shall not be lessened except upon consent of said Superintendent, and in case the whole of said capital is at any time withdrawn, the proportion of interest of said party of first part shall be in accordance with a contract heretofore made by and between the party of first part and said J. E. Cone.

"It is mutually agreed that no distribution of profits shall be called for before the last day of each year during the continuance of this agreement, but that profits may be used in extending the business until the net profits shall amount to one thousand dollars per month over and above current expenses."

Does this writing make all the subscribers to it, Morrell and Lake, Farrar, Linscott, Smith and Cone, partners? It is difficult to perceive any stipulation in it, which makes Lake and Morrell partners with the others named, or with the appellant. We should infer from the phraseology used, that Lake and Morrell were proprietors of some invention for the manufacture of magnetic electric fluid, and in order to raise funds to make the invention productive, they were under the necessity of calling to their assistance, other parties, and accordingly conveyed to Cone, the right to make and vend it, and all the stock and fixtures they had on hand appertaining to the business, they, as compensation, to receive thirty-seven and one-half per cent. of the profits to be realized by Cone in the manufacture and sale of the article; and to realize this compensation, or to provide a fund out of which it might be realized, Smith, Linscott and Farrar were to furnish fifteen thousand dollars as capital for the business. Morrell and Lake further agreed they would not, thereafter, make or sell the article, nor in any manner interfere with making and selling it, nor with the man-

agement of the business; and they further agreed, if called upon by Cone, they would compound the fluid at a reasonable salary, or in case of their default, Cone was instructed by a formula, delivered to him by them, by which he could compound it.

The parties sued, agreed with Morrell and Lake that Cone should have the superintendency and management of the business, and guaranteed to them that they should receive this thirty-seven and one-half per cent. of profits after all expenses should be paid, such expenses to include twenty per cent. per annum on the cash capital, they, the appellants and the others sued, had paid in, thus giving to the inventors or owners of the process for making the fluid, thirty-seven and one-half per cent. of the net profits as compensation for the secret, and twenty per cent. to the parties who had advanced the cash, out of which these profits were to accrue.

We fail to perceive any community of interest in the property of this adventure between Lake and Morrell, the owners of the secret, and the other persons, Smith, Linscott, Farrar and Cone, the three first named being alone required to furnish the stipulated amount of money, and Cone to have the exclusive management of the business at an annual salary, with twenty-five per cent. of net profits in addition, and to whom was conveyed the sole and exclusive right to make and sell the fluid while the agreement should continue.   It is apparent therefore, there was no community of interest as regards Morrell and Lake—they had nothing to do with the concern so far as its business was involved; they were mere creditors of Cone, to whom they had sold the secret with their stock on hand, to the extent of thirty-seven and one-half per cent. of the net profits, with a right of action against Smith, Farrar and Linscott, on their failure to furnish the money out of which this per cent was to arise.   This capital was not advanced or to be advanced, on joint account, but solely by Smith, Linscott and Farrar, and as to which, they might be considered as partners

as between themselves. By the agreement, Cone was the grantee of the right conveyed to him by Morrell and Lake, the consideration of the transfer being thirty-seven and one-half per cent. of the net profits arising out of its exercise, to gain which, Smith, Linscott and Farrar were to furnish fifteen thousand dollars, the whole affair to be managed by Cone at a stipulated compensation. There is no name given to the association, under which the business should be carried on, the agreement most clearly implying it should be managed exclusively by Cone in his own name. The grant was to him alone, and in order that profits might arise out of it, Smith, Linscott and Farrar agreed to furnish fifteen thousand dollars in money, and for the use thereof, they were to receive twenty per cent. on the amount actually paid in and used in the business. It seems to us that the presumption of a partnership is repelled by these facts, and that they satisfactorily show that the proportion of profits to be received by Morrell and Lake was as compensation for the transfer of their secret and of their stock on hand, and the twenty per cent. which was to be calculated in the expenses, was regarded as compensation to the party who advanced the money, and it is not an unusual mode of raising money to carry out an enterprise in which the parties concerned have no intention to be partners. Neither Smith nor the others advancing the money, had any claim to any share of the profits. It is not so expressed in the article of agreement; all for which they stipulated, was, that before thirty-seven and one-half per cent. of profits should accrue to Morrell and Lake, twenty per cent. per annum, on the amount of cash capital actually paid in, was to be included in the account of expenses, thus securing to them that per cent. on the money they advanced.

This article of agreement was seen and read by appellee, before he made the negotiations with Cone, which ended in the execution of this note by Cone. It will be observed the articles no where gave to Cone any power to borrow money or

execute notes by which the parties to them were to be bound, nor is there any thing in the articles from which such an inference can be drawn. All that is stipulated therein concerning Cone is, that as grantee of the right, he, alone, should have the exclusive right to make and sell the fluid—that he should have the sole and exclusive charge and management of the business at an annual salary to be charged to expense account, together with twenty-five per cent. of the net profits arising from the business. The power to borrow money and execute a note to bind the parties to this agreement, does not appear to be within the scope and object of the agreement, and appellee, by his inspection of the agreement was aware of that fact; consequently, he can have no right to hold parties liable who have not made themselves so, either by express contract on their own part, or by an agent duly authorized.

But if it be conceded there was a partnership, how long was it to endure? There is no time specified in the articles, but there is a stipulation in them, by which, on the occurrence of a certain event, the partnership, if there was one, would be dissolved, and that is, on the withdrawal of the capital.

If Smith, Linscott and Farrar were partners, they were so only because they had advanced the capital, and as no time was fixed for its duration, on the withdrawal of that element which made them partners, the partnership *ipso facto* ceased. It is in proof that this capital was withdrawn on the ninth of April, ten days before the execution of the note by Cone, and appellee knew by reading the articles, such a power to withdraw was reserved by those who advanced the capital; it was clearly then his duty to make inquiry of the persons who, by the articles, furnished the capital and could withdraw it, whether or not it had been withdrawn. It is in evidence that Cone consented to the withdrawal, at the time it was done, on the ninth of April, and of this fact abundant means of knowledge was accessible to the plaintiff.

6—46TH ILL.

To secure the payment of this note, Cone executed in his own name under his own seal, describing himself "Sup't M. E. M. F. Co.," a bill of sale of the entire concern to appellee.

We can account for the execution of this instrument and the arrangement thereby made with appellee, on this hypothesis only, that Cone well knowing the individuals who had advanced the money, had, ten days previously, with his consent, withdrawn it, and thus put an end to the concern, conceiving that he himself, was all that remained of the concern, had the power to sell and dispose of it, and to borrow money on the security it might afford, and to take the lender into the concern as a partner. All this seems clear from that paper, which is referred to in the argument as marked "Four." Surely, if the partnership had not been ended, by the withdrawal of the fund, Cone would have had no such power as that paper shows he exercised. The inference we draw from all the facts in the case is, that Cone, well knowing the partnership, if one ever existed, had terminated by withdrawal of the fund, was desirous of carrying on the business, either on his own account, or by associating appellee with him, hence, the fact of the advance by appellee of the two thousand dollars, and the execution of the paper marked "Four." That, of itself, made by one partner, worked a dissolution of the partnership, if there was one. It is contended by the appellee, that this paper was nothing more than a mortgage for the security of the note. Admitting it to be so, yet the mortgagee was put in the actual possession of the entire concern, managing it himself, or by his agent. In either view of this paper, a dissolution of whatever partnership existed, was effected by it.

It is said by appellee that this money obtained from him was to pay the partnership debts.

This fact is supported by the testimony of Kelly alone, who says, that five hundred dollars, part thereof, was paid on liabilities incurred after the date of the note, and fifteen hundred dollars, parcel thereof, before the 19th of April, how long before

is not stated. He says, "fifteen hundred dollars had accrued at the time the money was borrowed and was so far applied. The other $500 was paid on debts accruing after that." Now, as the fund was withdrawn with Cone's consent, on the 9th of April, at which time the parties, Smith, Linscott and Farrar, who put it up, ceased to have any connection with the concern, it was incumbent on the appellee to show, that the fifteen hundred dollars was applied to debts due before the 9th of April, in order to raise a legal or equitable obligation as against them to that extent. The defendants Smith and Linscott testify that every liability was discharged before the 9th of April, and ceasing to have any interest in the concern after that day, they cannot be affected by any claim of debts paid, contracted subsequently.

With these views the judgment must be reversed.

There is, however, another ground on which the judgment must be reversed, even if a partnership existed. The amount of the judgment is not warranted by the testimony.

It seems clear to us, if there was a partnership still subsisting up to the time this note was executed, then the assets conveyed to the payee of the note by Cone by paper marked "Four," should be applied to the payment of the note at their real value. If that had been reduced in two months by sales, by appellee, then the amount of those sales should be accounted for, and the appellant have his proportion of the benefit thereof. At any rate, Cone having no authority to make the allowance appellee claims, the note in suit should be credited with the full value at which he received the assets, namely, twelve hundred and sixty eight dollars. But this we deem an unimportant inquiry, as we are of opinion no partnership existed, and if it did exist, it was dissolved by the withdrawal of the element which made them partners, on the 9th of April, ten days prior to the execution of the note sued on.

The judgment is reversed and the cause remanded.

*Judgment reversed.*