### HODGSKIN v. HEIM et al.

(Supreme Court, Special Term, Kings County. January, 1901.)

PARTNERSHIP—DISSOLUTION—RIGHTS OF CREDITORS—FOLLOWING MONEY PAID IN FRAUD OF CREDITORS.

    A trustee in bankruptcy of an individual partner may maintain a suit to recover back partnership money paid in fraud of partnership creditors, where the firm assets became the property of such individual partner on a dissolution of the partnership, since after such transfer of the assets to the individual partner the firm creditors had no equitable right of recourse to the firm assets over the individual creditors.

Action by T. Ellett Hodgskin, as trustee in bankruptcy of the estate of Adolph Kuffler, against Ralph Heim and others. Judgment for plaintiff.

Action by the trustee in involuntary bankruptcy of the defendant Adolph Kuffler to have declared fraudulent against the creditors of the bankrupt various payments aggregating $10,020.66, made by the bankrupt to the

defendant Ralph Heim; or, failing in that, that $7,000 thereof be adjudged to have been so paid by way of unlawful preference under the bankruptcy law, in that the same was paid within four months prior to the filing of the petition in bankruptcy, and that the bankrupt was then insolvent to the knowledge of the said defendant Heim, and that the money was paid and received with the intention of giving him a preference; and in either case to trace the said money and get it back. It is alleged that the said defendant Heim paid the said money to his wife in discharge of a pretended indebtedness by him to her, and that she loaned the same to the defendant Pentlarge, who still owes it to her; and they are made defendants.

George W. Wingate, for plaintiff.

Ira Leo Bamberger and Roger M. Sherman, for defendants.

GAYNOR, J. The defendants Kuffler and Ralph Heim were partners in the wholesale tobacco trade from January 1, 1896, to January 1, 1899, under the firm name of A. Kuffler & Co. Heim's contribution of capital was $10,000 in cash. At the end of 1898 Heim went out of the firm, leaving all of the assets with Kuffler, who continued the business under the firm name until May 10, 1899, when he made a general assignment for the benefit of his creditors under the state law. On June 9th following, a petition in bankruptcy was filed against him, and he was adjudicated a bankrupt. The firm was insolvent at the time Heim went out, and so was each partner. Nevertheless between then and the filing of the petition in bankruptcy Kuffler paid back to Heim out of the assets of the business as it was then being conducted by Kuffler individually the $10,000 which Heim had put into the partnership as capital; viz., on January 21st $1,000, and on February 1st two checks by Kuffler, one for $2,020.66 and one for $2,000, the former being cashed at once and the latter on February 18th; and the balance by three promissory notes of Kuffler dated January 21st and for $1,666.67 each, payable February 12th, March 4th and March 18th, respectively; and they were paid after maturity. These three notes and the said check for $2,000 make up the sum of $7,000 which the plaintiff claims was paid in unlawful preference within four months prior to the filing of the petition in bankruptcy. The said sum of $1,000 was paid and all of the checks and notes were given and subsequently paid with knowledge by both parties of the insolvency of the firm and of the partners individually, and with the intention of both parties to give a preference to the said Heim over the creditors of the firm and also those of Kuffler. If the dates of the said check and notes which make up the said sum of $7,000, and not the dates of the payments thereof, are to be taken as the times of payment, then such payments were not made without four months prior to the filing of the bankruptcy petition, and recoverable back by the trustee in bankruptcy under section 40 of the bankruptcy law. But it is not material to consider this point, for I find that the payment of the entire sum of $10,020.66 was a fraudulent transfer of his assets by Kuffler as against the said creditors, irrespective of the bankruptcy law.

It is claimed, however, that this suit cannot be maintained, for the reason that the plaintiff is the trustee in bankruptcy of Kuffler only, the partnership not having been put into bankruptcy; and a trustee in bankruptcy of an individual partner cannot maintain a

suit to recover back partnership money paid away preferentially un-
der the bankruptcy law, or in fraud of the partnership creditors.
Amsinck v. Bean, 22 Wall. 395, 22 L. Ed. 801. But if it could be
deemed the fact that the money paid to Heim came out of the as-
sets of the firm taken over by Kuffler on the dissolution, still the
point is not well taken, for such assets became the individual prop-
erty of Kuffler upon the dissolution. Heim on going out left all
of the assets with him, and the evidence shows that this was in-
tended to be and was a transfer of them by Heim to him. After
that the firm creditors had no equitable right of recourse to the
firm assets over the individual creditors of Kuffler. The equitable
right of firm creditors to have their claims satisfied out of the firm
property in preference to claims against the partners individually,
in a liquidation of the firm business, is a derivative right only;
i. e., it is derived from the similar equity which belongs to each
partner as against his co-partner. Each partner has the right to
have the firm property applied to the payment of the firm debts in
preference to the individual debts of his co-partner, so that he may
ascertain the net assets and get his share thereof and not have it
taken by the creditors of his co-partner. From this equity which
partners have as between themselves, the firm creditors derive their
equity to have the firm assets first applied to the payment of their
claims. They are able to subrogate themselves to the said equity
of the partners. When by agreement one partner transfers his
share of the assets to his co-partner and goes out of the firm, and
the firm ceases, such equity of the partners of course ceases also,
for it cannot survive the partnership; and from this it follows that
the said derivative equity of the firm creditors must cease also.
Ex parte Ruffin, 6 Ves. Jr. 119; Case v. Beauregard, 99 U. S. 119,
25 L. Ed. 370; Fitzpatrick v. Flannagan, 106 U. S. 648, 1 Sup. Ct.
369, 27 L. Ed. 211; Huiskamp v. Wagon Co., 121 U. S. 310, 7 Sup.
Ct. 899, 30 L. Ed. 971. It is sometimes mentioned as an exception
to this rule that the assignment of his interest by the retiring part-
ner and the dissolution must be bona fide. But this is no exception
to the rule, for if the assignment and dissolution be only a fraud
and sham, then they do not exist at all in contemplation of law,
and to such a case the rule does not apply, any more than if there
were no semblance of an assignment and dissolution. It seems need-
less to say that in the present case the defendants do not claim
that the dissolution was mala fide. On the contrary, they contend
that it was bona fide, and that the firm was solvent at the time, and
that Kuffler was solvent when he paid the money to Heim.

The other rule, that in case a business is continued under the firm
name by one or more of the partners after dissolution of the firm,
the partner who retired is liable with them for the debts contracted
in the business after the dissolution, unless actual notice of the dis-
solution was given to those who had dealt with the firm and notice
by publication to all others, or the subsequent creditors had actual
knowledge of it before becoming such (3 Kent, Comm. 66; Ketcham
v. Clark, 6 Johns. 144; Graves v. Merry, 6 Cow. 701; Clapp v.
Rogers, 12 N. Y. 288; Austin v. Holland, 69 N. Y. 571; Bank v.

Herz, 89 N. Y. 629), is consistent with the rule stated above. In such a case the partnership does not in fact exist between the persons so liable, and therefore the equity with regard to the application of partnership assets to partnership debts first does not exist. Such a subsequent creditor without notice or knowledge of the dissolution may hold the former partners for the payment of his claim, but he is entitled in equity to no preference in the assets of the business over those who had notice or knowledge of the dissolution, and became creditors of the partner who continued the business only.

There seems to be no difficulty about a court of equity entertaining this suit as one to follow money fraudulently transferred, instead of remitting the plaintiff to an action at law against the defendant Heim, for the money is traced and cornered in the hands of the defendant Pentlarge. That makes a plain case for equity, and does not need the citation of extreme cases concerning equitable jurisdiction over cases of fraud; like Slim v. Croucher, 1 De Gex, F. & J. 518, which would uphold this suit in England if it were against the defendant Heim alone. The complaint is that the defendant Heim paid the money to his wife (who is also a defendant) in satisfaction of a pretended debt by him to her, and that she loaned it to the defendant Pentlarge, and that he holds it. The answer of Pentlarge does not deny that the money was loaned to him, or that he has it; and the proof is that Heim loaned it directly to Pentlarge and holds his notes therefor. This suit is therefore necessary in order to reach the fund in Pentlarge's hands.

Judgment for the plaintiff with costs.