KELLEY et al. v. McNAMEE.

(Circuit Court of Appeals, Ninth Circuit. October 5, 1908.)

No. 1,573.

MINES AND MINERALS (§ 99*) — MINING PARTNERSHIPS — LIABILITY OF RETIRING PARTNER.

A mining partnership, unlike an ordinary one, is not dissolved by the sale of the interest of one of the partners; but whether the retiring partner is liable for indebtedness of the partnership subsequently incurred depends on the facts of the case. As to employés who continue in the employment after the change, without knowledge thereof, his liability continues, but not for subsequent wages, if they know of the transfer.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 99.*

Mining partnerships, see note to G. V. B. Min. Co. v. First Nat. Bank of Hailey, 35 C. C. A. 515.]

In Error to the District Court of the United States for the Third Division of the District of Alaska.

McGowan & Clark and C. W. Miller, for plaintiffs in error.

T. C. West, Fernand De Journel, and Henry Roden, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. This action was commenced in the court below by the defendant in error to recover wages for work done by him and his assignors upon that certain placer mining claim known as "No. 3 Above Discovery on the Right Limits of First Tier of Benches on Dome Creek," in the Fairbanks mining district of Alaska. The case was tried by the court without a jury, on the stipulation of the respective parties, and resulted in findings of fact and a judgment in favor of the plaintiff to the action for the sum of $8,563.50, with interest from May 1, 1907, and costs of suit. In so far as the findings have any evidence at all to support them, they are conclusive upon us; but if it be true, as is insisted on the part of the plaintiffs in error, that in some respects at least they are not only wholly unsupported by the evidence, but are in conflict with the uncontradicted evidence in certain respects, we are not so concluded.

The complaint contains 17 counts. In each count it is alleged that on and prior to October 9, 1906, the defendants were, and ever since have been, and now are, partners in the business of mining on Dome Creek. The first count also alleges that between the 15th and 28th days of April, 1907, the plaintiff performed 12 days' labor for the defendants as engineer on the placer mining claim mentioned, at the request of the defendants, for which they promised to pay him $6 a day, no portion of which has been paid, and that there is now due and owing from the defendants to the plaintiff the sum of $54. The second count alleges that between October 9, 1906, and the 21st of April, 1907, James O'Day performed 195 days' work for the defendants on the said mining claim, on which last-mentioned day, at the place mentioned, an account was stated between O'Day and the defendants, upon which

statement a balance of $689.15 was found due, which the defendants agreed to pay O'Day, but no part of which has been paid; that on the 6th day of May, 1907, O'Day duly assigned all his right in and to the account to the plaintiff. The third count alleges that between October 9, 1906, and April 26, 1907, A. C. Johnson performed 195 days' work for the defendants on the said mining claim, and that on or about April 25, 1907, at Dome Creek, an account was stated between him and the defendants, upon which statement a balance of $938 was found due, which the defendants agreed to pay Johnson, but no part of which has been paid; that on the 6th day of May of the same year Johnson duly assigned all his right in and to said account to the plaintiff. The fourth count alleges that between October 9, 1906, and April 26, 1907, Frank Gustaveson performed 195 days' work for the defendants on the mining claim mentioned, and that on or about April 25, 1907, at Dome Creek, an account was stated between him and the defendants, upon which statement a balance of $823.15 was found due Gustaveson, which the defendants agreed to pay, but no part of which has been paid; that on the 6th day of May, 1907, Gustaveson duly assigned all his right in and to the account to the plaintiff. The fifth count alleges that between October 9, 1906, and April 25, 1907, Martin Nahtrin performed 195 days' work for the defendants on the mining claim mentioned, and that on or about the 25th day of April, 1907, at Dome Creek, an account was stated between him and the defendants, upon which statement a balance of $706 was found due Nahtrin, which the defendants agreed to pay, but no part of which has been paid; that on the 6th day of May, 1907, Nahtrin duly assigned all his right in and to the account to the plaintiff. The sixth count alleges that between October 9, 1906, and April 25, 1907, C. J. Hall performed 171 days' labor for the defendants on the mining claim mentioned, and that on or about the 25th day of April, 1907, at Dome Creek, an account was stated between him and the defendants, upon which statement a balance of $677.55 was found due Hall, which the defendants agreed to pay, but no part of which has been paid; that on the 6th day of May, 1907, Hall duly assigned all his right in and to the account to the plaintiff. The seventh count alleges that between January 8, 1907, and April 25, 1907, J. J. McDonald performed 108 days' work for the defendants on the mining claim mentioned, and that on or about the 25th day of April, 1907, at Dome Creek, an account was stated between him and the defendants, upon which statement a balance of $360.25 was found due McDonald, which the defendants agreed to pay, but no part of which has been paid, that on the 6th day of May, 1907, McDonald duly assigned all his right in and to the account to the plaintiff. The eighth count alleges that between January 4, 1907, and the 25th day of April, 1907, Peter Wenn performed 112 days' work for the defendants on the mining claim mentioned, and that on or about the 25th day of April, 1907, at Dome Creek, an account was stated between him and the defendants, upon which statement a balance of $327.50 was found due Wenn, which the defendants agreed to pay, but no part of which has been paid; that on the 6th day of May, 1907; Wenn duly assigned all his right in and to the account to the plaintiff. The ninth count alleges that between January 21, 1907, and April 15, 1907, Ed. Wilkinson performed 85 days'

work for the defendants on the mining claim mentioned, and that on or about the 25th day of April, 1907, at Dome Creek, an account was stated between him and the defendants, upon which statement a balance of $515 was found due Wilkinson, which the defendants agreed to pay, but no part of which has been paid; that on the 6th day of May, 1907, Wilkinson duly assigned all his right in and to the account to the plaintiff. The tenth count alleges that between January 21, 1907, and April 7, 1907, Edward Olsen performed 87 days' work for the defendants on the mining claim mentioned, and that on or about the 7th day of April, 1907, at Dome Creek, an account was stated between him and the defendants, upon which statement a balance of $349.50 was found due Olsen, which the defendants agreed to pay, but no part of which has been paid; that on the 6th day of May, 1907, Olsen duly assigned all his right in and to the account to the plaintiff. The eleventh count alleges that between December 5, 1906, and April 25, 1907, C. Knutson performed 142 days' work for the defendants on the mining claim mentioned, and that on or about the 25th day of April, 1907, at Dome Creek, an account was stated between him and the defendants, upon which statement a balance of $500.50 was found due Knutson, which the defendants agreed to pay, but no part of which has been paid; that on the 6th day of May, 1907, Knutson duly assigned all his right in and to the account to the plaintiff. The twelfth count alleges that between October 9, 1906, and April 25, 1907, Max Nelson performed 195 days' labor for the defendants on the mining claim mentioned, and that on or about the 25th day of April, 1907, at Dome Creek, an account was stated between him and the defendants, upon which statement a balance of $729.35 was found due Nelson, which the defendants agreed to pay, but no part of which has been paid; that on the 6th day of May, 1907, Nelson duly assigned all his right in and to the account to the plaintiff. The thirteenth count alleges that between the 9th day of December, 1906, and the 25th day of April, 1907, Jack Dugan performed 138 days' labor for the defendants on the mining claim mentioned, and that on or about the 25th day of April, 1907, at Dome Creek, an account was stated between him and the defendants, upon which statement a balance of $647.75 was found due Dugan, which the defendants agreed to pay, but no part of which has been paid; that on the 6th day of May, 1907, Dugan duly assigned all his right in and to the account to the plaintiff. The fourteenth count alleges that between October 18, 1906, and April 25, 1907, C. E. Allen performed 191 days' labor for the defendants on the mining claim mentioned, and that on or about April 25, 1907, at Dome Creek, an account was stated between him and the defendants, upon which statement a balance of $651.10 was found due Allen, which the defendants agreed to pay, but no part of which has been paid; that on the 6th day of May, 1907, Allen duly assigned all his right in and to the account to the plaintiff. The fifteenth count alleges that between March 17, 1907, and April 25, 1907, Chris Nerland performed 41 days' labor for the defendants on the mining claim mentioned, and that on or about April 26, 1907, at Dome Creek, an account was stated between him and the defendants, upon which statement a balance of $157 was found due Nerland, which the defendants agreed to pay, but no part of which has

been paid; that on May 6, 1907, Nerland duly assigned all his right in and to the account to the plaintiff. The sixteenth count alleges that between March 2, 1907, and April 26, 1907, Thomas Taralson performed 55 days' labor for the defendants on the mining claim mentioned, and that on or about April 26, 1907, at Dome Creek, an account was stated between him and the defendants, upon which statement a balance of $207.50 was found due Taralson, which the defendants agreed to pay, but no part of which has been paid; that on May 6, 1907, Taralson duly assigned all his right in and to the account to the plaintiff. The seventeenth count alleges that between March 2, 1907, and May 5, 1907, M. Wakkila performed 50 days' labor for the defendants on the mining claim mentioned, and that on or about May 5, 1907, at Dome Creek, an account was stated between him and the defendants, upon which statement a balance of $237.80 was found due Wakkila, which the defendants agreed to pay, but no part of which has been paid; that on May 6, 1907, Wakkila duly assigned all his right in and to the account to the plaintiff.

The defendants filed a joint amended answer, in which is a denial of all of the allegations of the first count of the complaint, coupled, however, with an express admission that the defendants have not paid the plaintiff any sum of money whatever. The amended answer then sets up that there is a misjoinder of parties defendant in the action, in that, at the time of the alleged performance of labor by the plaintiff, the defendant Kelley had no interest in the said property and was not a member of the partnership alleged in the complaint. In answer to the second cause of action counted on, the amended answer denies all of its allegations, except the assignment to the plaintiff, and expressly admits that the defendants have not paid the plaintiff any money. It also sets up a misjoinder of parties defendant in the second count, in that Williams is improperly made a party defendant in that cause of action for the reason that he owned no interest in the mining claim at any time prior to December 20, 1906, and that Kelley is improperly joined in that cause of action for the reason that he had no interest in the said property or in the work being prosecuted thereon subsequent to December 20, 1906. The amended answer contains similar denials, admissions, and alleged misjonders in respect to each of the other counts of the complaint.

Subsequently the defendants asked leave of the court to file a "separate and supplemental answer and counterclaim," in which it was alleged that the plaintiff and his assignors were at all of the times mentioned in the complaint employed as laborers on the placer mining claim mentioned, and that the terms of such employment were that they should receive their pay for such labor "after the dump of gold-bearing gravel taken out between the months of October, 1906, and the 1st day of May, 1907, and piled upon said claim, had been washed and sluiced up in the spring of 1907"; that on or about May 1, 1907, the plaintiff and his said assignors wrongfully, unlawfully, and fraudulently conspired together to prevent any of the defendants from washing up the said dump, "which said dump had been theretofore, during the period of the said plaintiff's and his assignors' employment, extracted from said mining claim," and that the plaintiff and his said as-

signors did at the time last stated "enter upon and incite a strike against defendants and their successors in interest, and all of them, and did then and there, contrary to the terms of their employment, leave the employ of defendants, and each of them, and then and there refuse to wash up said dump, or any part thereof, and by threats, intimidation, and coercion prevented other laborers from washing or sluicing the dump during the spring of 1907; that it is customary in the Fairbanks mining district, and particularly on Dome Creek, to use the snow water as it melts for washing up the winter dumps, and that by the alleged acts of the plaintiff and his assignors the defendants were prevented from doing so, and that by reason of the inability of the defendants to secure the gold in the dumps in the early spring, "at which time all of its obligations fell due, and at which time defendants were obligated to pay all bills for supplies and labor contracted during the winter, defendants were involved in a vast amount of litigation and were put to great and unnecessary expense in defending the same, and greatly embarrassed in the carrying on of their business, and damaged to the extent of $20,000," which damage was caused entirely by the alleged acts of the plaintiff and his said assignors. The prayer of this pleading was that plaintiff take nothing by his action, and that the defendants have judgment against him and his assignors in the sum of $20,000. The court below refused to permit the filing of the supplemental answer and counterclaim, to which action the defendants excepted, and here assign the ruling as error.

The defendant Williams also subsequently asked leave to file a separate answer, containing denials, admissions, and allegations similar to those contained in the other pleadings on the part of the defendants already mentioned, and also denying, upon information and belief, the alleged assignments to the plaintiff. The court below likewise refused to permit this last-mentioned answer to be filed, to which action of the court the defendant Williams excepted, and which ruling is also assigned as error.

On the trial there was introduced in evidence, on the part of the plaintiff, written articles of partnership "for the purpose of mining and working said mining claim," by and between the defendants Blondo, Broome, and Kelley, of date October 9, 1906, setting forth, among other things, the interest of each partner in the property and the proportions in which they should share in the proceeds. The evidence shows without conflict that Kelley sold all of his interest in the property to Williams on the 20th day of December, 1906, by the terms of which sale Williams assumed, among other things, the amount of Kelley's indebtedness to the miners then and theretofore working upon the claim, including some of the assignors of the plaintiff. The evidence further shows without conflict that such of the plaintiff's assignors as were working for the partnership prior to Kelley's sale to Williams continued working for the partnership after Williams succeeded to Kelley's interest, and that the plaintiff and the others of his assignors commenced working for the partnership subsequent to Kelley's sale to Williams.

The court below found the number of days that the plaintiff and each of his assignors worked upon the claim in question, the agreed rate of wages of each, the dates within which each of them worked, the amount of money earned by each of the miners at the agreed rate, that none of them had been paid, that the various alleged assignments were actually made to the plaintiff, and further found as a fact "that at all the times mentioned in plaintiff's complaint the defendants were mining copartners engaged in mining upon Placer Mining Claim No. 3 Above Discovery First Tier Right Limit of Dome Creek, Fairbanks Mining and Recording District, Territory of Alaska," and from the findings so made concluded as matter of law that all of the defendants are indebted to the plaintiff in the sum sued for, and gave judgment accordingly.

The finding to the effect that at all the times mentioned in the complaint the defendants were mining copartners, engaged in mining upon the placer claim in question, evidently proceeded upon the view of the law relating to mining partners expressed by the court in ruling upon a motion made during the course of the trial, as follows:

"A mining partnership differs in many respects from an ordinary partnership. Where three men go into a mercantile partnership, for instance, and one sells out, it is a dissolution of partnership under the rules of law. If he dies, it is a dissolution of the partnership. If one withdraws through bankruptcy, or for any other reason, from the partnership, it is a dissolution of the partnership; or if one sells out or retires in any way. But that is not true in a mining partnership. Where three men become mining partners, the partnership is not dissolved where one sells out and another man takes his place. The partnership goes right along. If one should die and his interest be sold out, another person may purchase that interest and become a partner; and he becomes a partner in the partnership without regard to the consent of the other partners. If they proceed with the work of the partnership, it is an approval on behalf of the other partners; and the rules of law permit just such a thing as was done in this case to be done. Upon the sale, if there was a sale, by Mr. Kelley of his interest to Mr. Williams, and the entrance of Mr. Williams into the partnership, the partnership was not dissolved in any way. It went right on. So that, in those respects, and in many other respects, there are great differences between mining partnerships and other partnerships."

In some respects the learned judge was correct in those observations, but in others the inferences and conclusions drawn by him are not correct. It is quite true that a mining partnership, unlike an ordinary one, is not dissolved by the sale of the interest of one of the partners; but it does not follow, from the mere continuance of the partnership, that the mining partner selling his interest continues liable for all of the debts of the partnership subsequently incurred. Under certain circumstances he may continue liable for subsequently incurred indebtedness of the partnership, as, for instance, where, as in this case, the partnership is indebted to laborers for work done while the partner selling was a member of the partnership, and such laborers continue their work upon the property without notice of such sale. In the case of Dellapiazza v. Foley, 112 Cal. 380, 44 Pac. 727, the Supreme Court of that state held a mining partner, disposing of his interest in the mining partnership, bound by the provisions of section 2453 of the Civil Code of California, which enacts that the liability of a general partner for the acts of his copartners continues, after dissolution of the partner-

ship, in favor of persons who have had dealings with and given credit to the partnership until they have had personal notice of the dissolution, saying:

"The law governing general copartnerships, with a few well-defined exceptions, applies to mining copartnerships. Therefore, a mining copartner, who claims exemption from the general law of partnerships, must show his case to be within some one of those exceptions. This appellant has failed to do; and I see no just reason for excepting the case of appellant from the full operation and effect of the above-cited section of the Civil Code—it being a part of the general law of partnerships, and its application to this case not being inconsistent with any exception heretofore recognized in favor of mining partnerships. Jones v. Clark, 42 Cal. 180; Stuart v. Adams, 89 Cal. 367, 26 Pac. 970. As to the 'personal notice of the dissolution,' required by the Code section cited, see Johnson v. Totten, 3 Cal. 343, 58 Am. Dec. 412, and Williams v. Bowers, 15 Cal. 321, 76 Am. Dec. 489. The notice must have been actual. The deed to the corporation was not even constructive notice to plaintiff of the sale."

We have been cited to no similar statute of Alaska, but the general rule governing ordinary partnerships upon the point applies. As to the plaintiff and such of his assignors as commenced work for the partnership after Kelley had ceased to be a member of it by reason of the sale of all of his interest in the property to Williams, it is clear that there should not have been judgment against Kelley; for he was an utter stranger to them, never having had any contract relations with them in respect to the property. As to such of the plaintiff's assignors as had commenced to work for the partnership while Kelley was a member of it, and continued such work after his sale to Williams, but without notice of such sale, Kelley is clearly liable under the well-established rule applicable to all partnerships, which general rule, however, exempts him from liability to such of the plaintiff's assignors whose work commenced for the partnership while he was a member of it and thereafter continued, either with actual notice of such sale or with knowledge of such facts and circumstances as were sufficient to have put a reasonably prudent person on inquiry as to the sale. Dellapiazza v. Foley, 112 Cal. 385, 44 Pac. 727; Treadwell v. Wells, 4 Cal. 260; Davis v. Keyes, 38 N. Y. 94; Holtgreve v. Wintker, 85 Ill. 472; Smith v. Vanderburg, 46 Ill. 34; Zollar v. Janvrin, 47 N. H. 328; Young v. Tibbitts, 32 Wis. 79.

The evidence shows without conflict that some of the plaintiff's assignors who were working on the claim at the time of Kelley's sale of his interest, and thereafter continued to work thereon, had actual notice of the sale; but the findings do not disclose which of such assignors had such actual notice or the equivalent thereof. We think the judgment right as to all of the other defendants, including Williams, who by the terms of his purchase from Kelley assumed the latter's proportion of the then existing indebtedness to the miners, and who was, of course, liable for the indebtedness thereafter incurred by the partnership.

The only assignment of error on behalf of Kelley individually is that:

"The court erred in failing to find, as a matter of fact, that defendant James Kelley was improperly joined as party defendant in said action."

That assignment is not well taken, for Kelley was unquestionably liable for the indebtedness incurred while he was a member of the partnership, and was, therefore, a proper party defendant. It is true that the court is authorized to take notice of and act on a plain error in the absence of an assignment; but in view of the nature of this case, that the defendant in error, possibly relying upon the assignments of error, has made no appearance here, the conditions prevailing in the territory where the cause arose, the fact that the judgment is right as to all of the parties except Kelley, right as to him in part, and cannot be changed, except by reversing the whole judgment and sending the case back to the court below for a new trial, we are of the opinion that the case is not a proper one for the exercise of our discretion to notice and act on a plain error not assigned.

The judgment is affirmed.