JOHNSON, Respondent, v. TOTTEN and KELLOGG, Appellants.

A consignment of merchandise was made to defendants as partners; after the dissolution of the partnership, two sales of a portion of the merchandise were made; one by each partner, who severally received the money : Held, that the partnership continued for the purpose of fulfilling engagements; and that the defendants were jointly liable.

To affect the rights of one, dealing with a partnership firm, actual notice of its dissolution must be brought home to him.

In an action for money had and received by the consignor, the amount of goods sold on credit by the consignee, having no authority so to sell, can be recovered.

Such sale must be taken, in reference to the rights of the plaintiff, to have been made for cash; and to the vendor belongs the demand created by the sale against the vendee; and the vendor is liable to the plaintiff for money had and received.

APPEAL from the District Court of the Fourth Judicial District.

This was an action for money had and received by defendants, as co-partners in trade for the use of the plaintiff, being the proceeds of goods sold by defendants on consignment, from plaintiff. The suit was commenced May 31st, 1852; one of the defendants, Totten, made default, the other, Kellogg, answered. The case was referred to C. T. Emmett as a sole referee, to try all issues and report a judgment in the case.

There was proof of several consignments by several vessels, to be sold at the usual commissions of ten per cent. and of consignments by several other vessels, to be sold at a commission of half profits; all of which consignments were received by defendants before the 18th February, 1852; and plaintiff proved that he consigned to defendants, per ship Hurricane, an invoice of butter, to be sold at 10 per cent. commissions, which arrived in San Francisco between the 15th and 25th April, 1852, the bill of lading of which was enclosed by plaintiff to defendants by the firm name.

The defendants dissolved partnership on the 18th February, 1852, and defendant, Kellogg, objected to all evidence derived

from his books, or transactions subsequent to that date; and his counsel insisted that the goods consigned to be sold on half profits, amounted to a partnership between plaintiff and defendants.

The dissolution of the partnership was declared by an instrument in writing of the date 18th February, 1852, and the dissolution was published by Kellogg, with the consent of Totten; and they informed the plaintiff of the dissolution by the mail which left San Francisco on the 1st March, 1852. On the 20th March, 1852, before the said mail could have reached New York, the plaintiff left that city for San Francisco, in the steamer designed to connect with the North America, which was lost on her previous voyage, which occasioned the detention of the plaintiff at Nicaragua some weeks, and he did not arrive at San Francisco till the 17th May, 1852, and could have had no notice of the dissolution till his arrival.

After the dissolution Totten remained about Kellogg's store for two weeks, when he hired with Kellogg as a clerk, in which capacity he remained till about the 28th May; and on the arrival of the ship with the butter, the defendants differed as to who should receive the consignment, each claiming it; but ultimately agreed that, as Totten was then acting as a clerk in Kellogg's store, the butter should be taken and sold by them, and the commissions be equally divided between them; Kellogg then endorsed the bill of lading "Totten & Kellogg," with the approval of Totten; and the goods were delivered to them. The money received by Totten on these sales was paid to Kellogg's book-keeper for Kellogg. And to prove the amount of sales, the plaintiff gave in evidence the defendants' books, produced on notice, and depositions of witnesses taken under a commission issued on the application of the defendant Kellogg, which Kellogg's counsel objected to.

The books of defendants showed a sale of goods by defendants to Cheesboro & Bell, of Oregon, and did not show that the amount had been collected, nor the length of the credit given. Defendants proved that these goods were sold on credit, and claimed, that under plaintiff's instructions they had the right so to sell, and that defendants could not be charged with the proceeds

of the sales, without proof that the amount had been collected by them. Defendants produced several letters from plaintiff, to show their right to sell on credit, which gave no such power in direct terms ; they urged speedy sales, and caution against fire ; but forbid sales at a sacrifice, and left the *time* of sale, &c., to the defendants' discretion ; not one gives any authority to sell on credit. And Totten, also, who was called by Kellogg, proved that the custom was to sell for cash, and if sold on credit it was at the risk of the commission merchant. The sales on credit, amounted to $1780, as shown by defendants' books ; and the consignment of butter sold for about $7000 ; which was received after the dissolution of the partnership.

The foregoing exhibits the facts substantially, so far as the points decided in this court are concerned.

The referee found for plaintiffs $14,341 59. Defendants appealed.

*Hackett* and *Judah*, for appellants.

The judgment should either be set aside or certain amounts stricken from it, viz., $925 received by Kellogg, and $854 received by Totten, after the dissolution ; and $6069 78, the proceeds of the Hurricane's invoice.

The action is assumpsit against Totten and Kellogg, as co-partners, for money had and received, &c. To support this the plaintiff was bound to prove that defendants, *as partners*, received the money jointly. Defendants' liability arising out of any other state of facts must be pleaded specially, and no recovery can be had in this form of action.

The referee erred in allowing the amount of the goods sold on credit, under the pleadings in the case. If defendants were liable for a disobedience of orders, or neglect of duty, an action on the case, with an averment of consideration, was the remedy, and not assumpsit for money had and received.

Defendants were partners on the sales made at half profits.

——, for respondent.

The sales on half profits did not create a partnership, but was a mode of ascertaining the compensation of defendants. 2 H.

Black, 590; Sts. on Part. sect. 32 and note; sects. 36 and 43; 1 Stor. R. 371.

There is no valid objection to the form of the action. Paley on Agency, by Dunlap, 53 and note. If erroneous, defendants should have demurred specially; after pleading it is too late.

As copartners, the act of one was the act of both, and money received by one, is received by both. Collyer, sect. 422; 3 Nel. 114; Godfrey v. Sanders.

The dissolution of the firm could not affect the rights of plaintiff until notice was brought home to him. The plaintiff arrived in San Francisco, in May, 1852, and then first received notice of the dissolution. *Quoad*, the plaintiff, the partnership continued down to the term of his arrival, and to this time the acts of either were the acts of both. National Bank v. Norton, 1 Hill, 572.

After the dissolution, the proceeds of all the sales went into the hands of Kellogg, who appealed on the ground that Totten, who had made default, was not liable. The plaintiff could have held Kellogg alone.

The merchandise from the Hurricane was consigned before, but arrived after the dissolution, though before notice to plaintiff. Defendants jointly received, and jointly made sale of it, and divided the commission, they are, therefore, jointly liable; for the dissolution was inoperative without notice; and here was a joint undertaking, and, therefore, a joint liability. Paley's Agency, by Dunlap, 52; Waugh v. Barber, 2 H. Bl. 235.

The goods sold to Cheesboro were properly included in the recovery; the referee found that defendants received money or money's worth; they charged 2 per cent. per month, and, therefore, took a note, which, not having been produced, must have been paid. 1 Doug. 137, 138.

HEYDENFELDT, Justice, delivered the opinion of the court. MURRAY, Chief Justice, concurred.

The respondent urges that two sales, and receipts therefrom of money were made after the dissolution of the partnership, one by each partner, and that they were therefore not jointly liable. I am satisfied that notwithstanding the dissolution of the part-

nership, yet for the purpose of fulfilling engagements made during its existence, it had a limited existence legally, and subsisted for such purpose, even after the act of dissolution by the parties. See Collyer on Part. 118.

Independent of this position, it is positively shown that the plaintiff had no notice of the dissolution, which was absolutely necessary in order to change the character of the defendants' liability. To affect the rights of one dealing with a partnership firm, actual notice of its dissolution must be brought home to him. It is true that notice may be implied from circumstances, but in this case, it is shown positively that although the defendants took every necessary step to give the notice, yet it was impossible that the plaintiff could have received it.

Another objection is that the amount of a sale made on credit is charged to the defendants, which could not be done in this form of action, because if they had no right to sell on credit, they would only be liable for unskilful management, and not for money had and received.

We have arrived at a different conclusion. If the defendants had no right to sell on credit, as appears from the evidence, having the right to sell, the sale must be taken in reference to the rights of the plaintiff as having been for cash. To the defendants belong the demand which the sale created against their vendee, and they are liable to the plaintiff as for money had and received.

Judgment affirmed.