THE STODDARD MANUFACTURING COMPANY v. KRAUSE ET AL.

[FILED JUNE 27, 1889.]

1. **Partnership.** An ostensible partner retiring from a firm must give notice of his retirement or he will be liable to creditors of the continuing firm or partner, who either carries on the business, or is charged with the duty of liquidating the business of the partnership.

2. ———: DISSOLUTION. To affect the rights of one dealing with a partnership firm, actual notice of its dissolution must be brought home to him. (*Johnson v. Totten*, 3 Cal., 343.)

ERROR to the district court for Platte county. Tried below before POST, J.

*McAllister & Cornelius*, for plaintiff in error, cited : *Pecker v. Hall*, 14 Allen, 532; Bates, Law of Partnership; secs. 607, 611, 612, and cases cited; *Warren v. Ball*, 37 Ill., 77; *Bayard v. Johnson*, 2 Peters, 186, and note; Wade, Law of Notice, sec. 530; Abbott's Trial Evidence, p. 222, par. 40 ; Story on Partnership, sec. 160; *Southern v. Grim*, 67 Ill., 106; *Williams v. Bowers*, 15 Cal., 321.

*M. Whitmoyer*, for defendant in error.

COBB, J.

This cause was brought to this court on error from the district court of Platte county.

The Stoddard Manufacturing Company, organized as a corporation under the laws of the state of Ohio, and authorized to do business in this state, complains that Gus. R. Krause, Henry Lubker, and W. J. Welch, a copartnership formed and doing business in this state, under the firm name of Krause, Lubker & Welch, on June 24, 1886, bought of the company certain goods, wares, and merchandise, consisting of agricultural implements, which were delivered to the firm, in part payment for which that firm endorsed and transferred to the company a certain promissory note as follows:

"$100.                          No. .........
                    "COLUMBUS, NEB., October 1, 1886.

"On or before the first day of July, 1887, for value received, I or we promise to pay to Krause, Lubker & Welch, or order, one hundred dollars at Columbus State Bank, with interest from date until paid at the rate of ten per cent per annum.
                    "(Signed)      G. R. KRAUSE.

Indorsed: "Pay to the order of the Stoddard Mf'g Co., protest waived. (Signed) Krause, Lubker & Welch,"

which was not paid by either drawer or endorser; also a second promissory note as follows:

"$26.           COLUMBUS, NEB., August 24, 1886.

"On or before the 1st day of June, 1887, for value re-ceived, in one hay rake, I, we, or either of us promise to pay the Stoddard Manufacturing Company, Dayton, Ohio, or order, twenty-six dollars at the Columbus State Bank, with interest at the rate of ten per cent per annum from date until paid.       (Signed)       WM. T. PRICE."

Indorsed: "For value received I or we hereby guar-antee the payment of the within note at maturity, or at any time thereafter, or any renewal of the same, and hereby waive protest, demand, and notice of non-payment thereof. (Signed) Krause, Lubker & Welch;" which was not paid by drawer or guarantor, by reason of which the company demand judgment against the firm for $126, with interest at ten per cent on $100 from October 1, 1886, and at the same rate on $26 from August 24, 1886, and costs of suit.

The separate answers of defendants, Lubker and Welch denied each and every allegation of the plaintiff except that it is a duly authorized corporation.

There was a trial to a jury with a finding for the de-fendants as to the first note of $100, and for the plaintiff on the second note of $26, with verdict for plaintiff of $30.50.

The plaintiff's motion for a new trial was overruled, judgment entered on the verdict, and exceptions taken.

The plaintiff in error assigns the following causes:

1. The verdict is contrary to law.

2. The verdict is not sustained by the evidence.

3. The court erred in giving the instruction to the jury.

It appears from the evidence that the defendants, Krause, Lubker & Welch, were general partners engaged in the sale of agricultural implements at Columbus, in this state,

as a firm or partnership of the name and style of Krause, Lubker & Welch. For aught that appears in the case they were all active partners, taking an equal part in the business of the firm. They purchased agricultural implements on credit of the plaintiff, a manufacturing corporation of Dayton, Ohio, under an agreement that plaintiff receive in payment for said goods from time to time the notes of the customers of said firm endorsed or guaranteed by them. The firm was dissolved on the 3d or 4th day of November, 1886, being then indebted to the plaintiff. There was evidence offered which it is assumed tended to prove that a notice of such dissolution was published about that date, but upon objection said evidence was rejected. It does not appear whether the business was continued by any or either of the partners, nor indeed what were the terms of the dissolution or whether any provision was made for winding up or settling the partnership business. But it does appear that on or about the 10th day of said month of November the plaintiff received by mail from the defendants an invoice of indorsed and guaranteed notes to apply on the indebtedness of defendants to the plaintiff, the receipt of which was acknowledged by letter dated the 10th of said month and in the due course of business. In this invoice or remittance of notes were the notes sued on. While the evidence is not very clear, there can be no doubt that the defendants had credit on their account with the plaintiff for the full amount of these notes. It does not appear which one of the defendants performed the clerical work of enclosing and mailing said package of notes to the plaintiffs or of writing the letter of transmittal, nor do I think it at all important. It appears from the testimony of the defendant, G. R. Krause, that at the time of the dissolution he was indebted to the firm for a pulverizer, a rake, and some other goods of the plaintiff's manufacture, amounting in all to one hundred dollars, which he had taken for use on his farm; that he executed his note

to the firm therefor, placed it in the firm's safe and entered it on the books of the firm, after having endorsed it in the name of the firm. This endorsement, he says, he placed on the note after the dissolution of the firm. But it appears from the deposition of William J. Jones, bookkeeper and treasurer of the plaintiff, that the two notes sued on were received by the plaintiff, endorsed to it, on the 10th day of December, 1886, as a part of an invoice or remittance of notes as hereinbefore referred to, made on the 4th day of the said month; that the defendant firm had full credit on their indebtedness to the plaintiff for the said invoice or remittance of notes, including the notes sued on, and that no part of the notes sued on had been paid; and that at the date of the receipt of said notes plaintiff had no notice of the dissolution of said firm.

The court instructed the jury as follows:

"In this case the answering defendants, Lubker & Welch, admit their liability for the amount of the note of W. T. Price; you will therefore find for the plaintiff to the amount of said note. The law and the facts are with the defendants so far as the note signed by G. R. Krause is concerned, and you will find for the defendants as to that note."

The plaintiff presented the following instruction, which was refused:

"The court instructs the jury that if they find from the evidence that the goods in controversy were sold and delivered to the defendants and the notes in suit were transferred to the plaintiffs before they were informed of the dissolution of the firm of Krause, Lubker & Welch, the defendants are liable."

While as above stated it does not appear from the bill of exceptions whether after the dissolution of the firm the business was continued by any or either of the partners, or whether any provision was made for winding up or settling the partnership business, yet there is a hint in the

testimony of Henry Lubker, who was sworn and examined as a witness on behalf of the defendants, that Mr. Krause was either by the terms of the dissolution or by the sufferance, permission, and assent of the other partners the *liquidating* partner of the dissolved firm. I copy from the evidence of Henry Lubker:

Q. Take this $26.00 note marked Exhibit "B." Mr. Lubker, who was the owner and in possession of that note at the time of the dissolution of your firm?

A. Why the firm of Krause, Lubker & Welch held it in trust for the Stoddard Manufacturing Company till we dissolved and then turned it over to Mr. Krause.

Q. Who endorsed that note?

A. I don't know; it looks like Mr. Krause.

Q. Was that endorsed while the partnership was in existence?

A. No, sir.

Q. Did your firm ever endorse that note and transfer it to anybody?

A. No, sir.

The case of *Lloyd v. Thomas,* 79 Pa. St., 68, is a case precisely in point with the case at bar, if Krause was either expressly or impliedly made the liquidating partner upon the dissolution of the firm. I copy the syllabus:

"A firm dissolved in May, giving notice by publication and authorizing one to use the firm name as liquidating partner. In August, without the knowledge of his fellows, he drew notes payable to the firm, endorsed them with the firm name, had them discounted by bankers with whom the firm had never had dealings; the proceeds of the notes passed to the individual credit of the partner making them ; there was evidence that the proceeds were applied to the firm debts. *Held,* That if the notes were *bona fide* for liquidation and the proceeds applied to payment of firm debts, the other partners would be liable."

In the case of *Fulton v. Central Bank of Pittsburgh*, 92 Id., 112, the court in the opinion says: "It is well settled that after dissolution a liquidating partner may bind his late copartners in borrowing money to pay the debts of the late firm. He may renew an accommodation endorsement and give notes to liquidate the partnership indebtedness. * * * The authority to act as a liquidating partner does not require an express and specific appointment. When one so acts with the knowledge of his late copartners, their permission may be presumed."

In his late and valuable work on the "Principles of Partnership" Professor Parsons thus states the rule: "If no liquidating partner is appointed, any partner who continues the business can bind his copartners for a liquidation." (Principles of Partnership, sec. 185.)

In the case at bar, although, as above stated, there was an attempt to prove the publication of a notice of the dissolution of the partnership of defendants, yet no evidence of such publication was received or is to be found in the record. It has been often held that where a partnership relation has existed between two or more persons and one or more of them seeks to defend against an obligation incurred in the partnership name by one or more of the partners who continued the business, on the ground that the partnership had been dissolved, they must prove at least constructive notice of such dissolution. (See *Southern v. Grim*, 67 Ill., 106; *Speer v. Bishop*, 24 O. S., 598; *Johnson v. Totten*, 3 Cal., 343; *Williams v. Bowers*, 15 Id., 321, and *Woodruff v. King*, 47 Wis., 261.)

But as there must be a new trial it is deemed not inappropriate to say that the mere publication of a notice of dissolution in a local newspaper at the residence of defendants would probably not be deemed binding upon the plaintiff, a resident of a distant state, with whom defendants had long had important dealings and business relations, but that actual notice should be brought home to him.

The judgment of the district court is reversed and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.

THE other Judges concur.