·JOHN WILSON *and others versus* LEWIS F. STRATTON.

·A contract of sale between a vendor in another State, and a purchaser in this State, in which it is stipulated that, after the goods are delivered here, the purchaser need not have them nor pay for them, unless they suit him, is not complete until after the delivery is made, and the purchaser has an opportunity to make his election.

A sale of intoxicating liquors in this State, by a Massachusetts dealer, he knowing that they are intended by the purchaser to be sold in violation of the laws of this State, is illegal and void; and an action on a note, given for a part of the price, cannot be maintained.

Where the Massachusetts dealer, well knowing the law and policy of this State, prohibiting the indiscriminate sale of intoxicating liquors, sends his agent to solicit orders for liquors to be sold here in violation of law, even if the sale is completed in Massachusetts, it is in fraud of our laws, and cannot be upheld by any sound principle of comity.

THIS was an action of ASSUMPSIT on a note, as follows:—

"$231,54.                          "Boston, Jan'y 25, 1858.

"Four months after date, I promise to pay to the order of Wilson, Fairbanks & Co., two hundred and thirty-eight, 54-100 dollars, at Winn, Me., value received.        L. F. Stratton."

Indorsed, "June 10, 1858. Received on the within $41,00."

The plea was the general issue, with a brief statement, that the consideration of the note was illegal, being for intoxicating liquors sold in violation of law.

The facts were reported by APPLETON, J., April term, 1860, the law Court to draw any inference from the testimony that a jury might properly draw, and render such judgment as the law requires.

From the deposition of the defendant, introduced by himself, and that of William Smith, introduced by the plaintiffs, the following facts appear:—The plaintiffs were dealers in liquors in Boston, and Smith, as their agent, solicited orders from the defendant, some time previous to the date of the note, at the public house which the defendant kept in Winn. The defendant, at that time and place, ordered certain liquors, which were afterwards forwarded to him from Boston. A

bill of the liquors was sent, at the prices agreed upon, and a charge for trucking added, which the defendant paid.  He also paid freight from Boston to Bangor, and cost of transportation to Winn.  Afterwards, at the defendant's public house in Winn, he paid Smith $25, cash, and gave the above note for the balance of the bill; and in June, 1858, he paid $41 on the note.

The defendant further testified, that he never looked after the goods, nor directed them to be looked after, until they reached him · in Winn; that he wrote no order, and sent no order or letter, and had no transactions with the plaintiffs except at his house in Winn; that he agreed with Smith, that if the liquors were not what they were represented, he need not take them nor pay for them; that they did not prove to be of good quality, and he afterwards requested Smith to take them back, but Smith refused.  Smith testified that the defendant never refused to pay the note nor asked for any discount, but when the indorsement was made, promised to pay the balance when he could.

*Blake & Garnsey*, for the plaintiffs.

The only question presented is, was the consideration of this note void ?  The law declares all contracts founded on the illegal sale of liquor in this State void.  Was the sale made in this State ?

1. The defendant gave an order to Smith for liquors at the defendant's house in Winn.  The liquors were put up in Boston, and there delivered to a truckman, who put them on board the boat for Bangor.  The defendant paid both the truckman and the freight on the boat.  The delivery to the truckman completed the sale, and *then* the defendant's liability commenced.  *McIntire* v. *Parker*, 3 Met., 207; *Torrey* v. *Corliss*, 33 Maine, 333; ·*Orcutt* v. *Nelson*, 1 Gray, 536.

2. The defendant says he never looked after, nor ordered the liquor looked after, till it reached him at Winn.  This does not alter the position.  A delivery to a common carrier, in the usual course of business, when no carrier is named by

the purchaser, is a good constructive delivery to vest the property in the vendee. *Dutton* v. *Solomonzer*, 3 Bos. & Pul., 582. Here, by payment of freight and acceptance of the goods, the defendant makes the delivery equivalent to a delivery to a designated common carrier, which certainly absolutely vests the property in him, subject to the right of stoppage *in transitu* only. *Stanton* v. *Eager*, 16 Pick., 467.

3. There is no evidence that the sale was invalid by the laws of Massachusetts. The validity of a contract is always determined by the laws of the place where made, and must be so held, wherever it is sought to be enforced. *Dater* v. *Earl*, 3 Met., 482, and cases cited; *Banchor* v. *Mansel*, (see *ante*, page 58.) The contract, therefore, being made in Massachusetts, and being legal there, must be held valid here, and the consideration of the note good.

*F. A. Wilson*, for the defendant.

This action cannot be maintained, under the statute of 1856, c. 255, § 18, in force when the sale was made.

The validity of a contract is to be determined by the law of the place where it is made. *Banchor* v. *Mansel*, (see *ante*, page 58.) It appears by the defendant's testimony, that all the transactions he had with the plaintiffs were at his house in Winn; that he wrote no order or letter. In *Torrey* v. *Corliss*, 33 Maine, 333, and *Orcutt* v. *Nelson*, 1 Gray, 536, cited for the plaintiffs, the facts were different; written orders were sent by the purchaser out of his own State, and the sales were not completed until the orders were filled in the State where they were sent. So long as any thing remains to be done on either side, the sale is not complete. *Houdlette* v. *Tallman*, 14 Maine, 400; *Banchor* v. *Cilley*, 38 Maine, 553. In the case at bar, if the sale was not complete when the bargain was made at Winn, it was not until the liquors were received and accepted at that place by the defendant. It does not follow, because trucking was charged in the bill of liquors, and the defendant paid the freight from Boston, that the sale was made at that place; for the defendant gave

no orders respecting the mode of sending, and did not look after them until they reached Winn. If they had been seized at Bangor, the plaintiffs could have claimed them as their property.

If sold in Massachusetts in violation of the Act of that State, passed in 1855, c. 215, a note given for the price could not be collected by the original holder. The sales, therefore, are made so loosely that the dealer may either claim or disown the liquors as occasion calls.

But the parties to the note in suit took pains to bring the contract under the laws of this State, by making the note payable at Winn. 2 Parsons on Contracts, 97. It is in evidence that the agreement was, that if the liquors did not prove to be such as they were represented, the defendant need not take them nor pay for them. This shows that the sale was not completed until the defendant accepted the liquors.

There is a failure of consideration for the note; and it is a question for the Court, whether the defendant has not already paid the actual value of the liquors. It appears they were not what they were recommended to be; and the plaintiff fails to show their actual value.

The rule " *caveat emptor,*" does not apply, for the vendor only had the means of knowing the quality of the goods sold. The purchaser had only the representations made. The vendor, in such a case, warrants them to be what the purchaser understands them to be. 1 Parsons on Contracts, 466. The defendant testifies that, after he had examined the liquors, he requested Smith to take them back, but Smith refused. Under such circumstances, the defendant cannot be held for more than the actual value.

*Blake & Garnsey,* in reply.

1. It is immaterial whether the order was sent by letter or by word of mouth by Smith, so far as it goes to determine the place of sale. The giving of the order, the taking it by Smith, did not make a sale. When he got to Boston, the

plaintiffs might fill it or not, at their election. It was simply an offer to buy, which they might accept or reject. It had no binding force on them as a contract.

2. The agreement that the defendant might return the liquors, if not satisfactory, forms no element of the contract of sale, to determine either the time when or place where it becomes complete.

A is prosecuted under this law for the sale of intoxicating liquors; shall he be permitted to escape, on the ground that the purchaser has the privilege of returning them if not satisfactory? In other words, by setting up, that in consequence of such condition the sale is not complete?

Then, again, such return, if it amounted to any thing as *affecting the sale*, must be made within a reasonable time. But here the note was given some five or six months after the purchase, and the proposal to rescind was *after that;* and then only as to part. By giving the note, and by the delay, which was more than a reasonable time, the defendant ratified the trade, if ratification was necessary; and such ratification relates back to the date of purchase.

3. The laws of Massachusetts were not offered in evidence by the defendant. He cannot invoke their aid. Had he put them in, we should have shown that the plaintiffs were licensed under them to sell.

4. We do not claim that the place where the note was made is material to the issue. If the sale was made and complete in this State, the defendant is right; if in Massachusetts, we are. Where was the sale made, is the only question.

The opinion of the Court was drawn up by

RICE, J.——The consideration for the note in suit was intoxicating liquors. The question presented by the parties is, where was the contract for the liquors, out of which the note originated, completed. The plaintiffs concede, that if that contract was made in this State, there was no legal consideration for the note.

The case shows that the defendant, at the time the liquors were purchased, was a tavern keeper in the town of Winn, in this State, and that he gave a verbal order for them at his house, in that town, to an agent of the plaintiffs.  The order was filled by the plaintiffs in Boston, Mass., and the liquors forwarded by steamer to the defendant.   The truckage, from the warehouse of the plaintiffs to the wharf in Boston, was charged in the bill with the liquors, and afterwards settled by the defendant, and the freight was also paid by him,.he, however, giving no direction as to the shipment of the goods, nor did he take any personal control over them until they reached his place in Winn.

In view of these facts, it is contended by the plaintiffs, that the delivery of the goods, which had been ordered by the defendant, to a common carrier in Boston, for transportation to the defendant, was in law a delivery to him, and that this delivery was a completion of the sale in Massachusetts; and, further, that there is nothing to show that such sale in Massachusetts was in violation of law, and, consequently, under the authority of *Torrey* v. *Corliss*, 33 Maine, 333; *Orcutt* v. *Nelson*, 1 Gray, 536; *McIntire* v. *Parks*, 3 Met., 207, and other authorities of like character, the action may be maintained, though the contract, if made in this State, would be unlawful.

Were there no elements in this case differing, and distinguishing it from the cases relied on, such might be the fact. But the defendant testifies, and on this point he is not contradicted, that "Smith, (the agent to whom the order was given,) told me when I agreed with him for the liquor, that if I did not get just what I wanted in every respect, I need not have it, nor pay for it."

He also testified, that this liquor was all entirely different from what he had agreed for with Smith, and a poorer quality.

This is an important qualification.   The order was given in Maine; the goods were delivered to a common carrier in Massachusetts, directed to the defendant in Maine, subject,

however, to his acceptance or rejection as they should or should not prove satisfactory to him.

Where an agreement is conditional, it shall not be complete till the condition be performed, as if a man sell goods for so much as A shall name, this contract is not complete till A shall name the price. Com. Dig., Agreement, A, 4.

If the condition be, if he likes the corn or goods upon view, when he first has seen them, and agreed or disagreed, approved or disapproved, the bargain is complete. Ib.; Story on Contracts, 20; Brown on Sales, § § 44, 45.

Where the goods of A were sold by a broker to B, on Saturday, "the quality to be approved on Monday," and the buyer did not renounce the contract on Monday, it was held, that, *after that day*, the contract became absolutely binding on both parties. Long on Sales, 281.

The contract in this case was conditional; upon a condition precedent. That condition could not, under the circumstances, be determined until the goods came to the defendant's hands. Until he had determined whether the liquors were just what he wanted in all respects, or had a reasonable opportunity to do so, the contract was incomplete. *Crane v. Roberts*, 5 Maine, 419; *McConners v. McNulty*, 1 Gray, 139; *Grout & al.* v. *Hill & al.*, 4 Gray, 361.

This is decisive of the case.

But even were we to find that the sale was technically completed in Massachusetts, it may well be doubted whether this action can be sustained. The policy of this State to prohibit the indiscriminate sale of intoxicating liquors, is matter of almost universal notoriety. No part of our State policy has been the subject of more deliberate consideration on the part of our Legislature and of our people. Laws prohibiting this traffic, under severe penalties, have long been upon our statute book. Of the existence of these laws the plaintiffs could not have been ignorant. Yet, in the face of these laws and of the known and settled policy of the State, they send their agents into the State to seduce our citizens to en-

ter into contracts looking directly to their violation, and, after having succeeded by such solicitation, in inducing them to enter into such a contract, they come before our courts and ask them, on the principle of comity, to enforce them on the technical ground that they were *completed* in another State. Such proceedings are manifestly in fraud of the laws of the State, and cannot be upheld by any sound principle of comity. *Banchor* v. *Mansel, ante,* p. 58. *Plaintiffs nonsuit.*

CUTTING, APPLETON, MAY, and KENT, JJ., concurred.

TENNEY, C. J., concurred in the result.