FROHLICH, GARDT & COMPANY

v.

E. D. ALEXANDER ET AL.

*Sales—Illegality—Avoidance—Delivery—Partnership—Dissolution.*

1.   The mere knowledge of the seller that the buyer intends an unlawful use of the goods sold will not avoid the contract of sale.

2.   Delivery to a carrier of goods sold is delivery to the consignee, and the law of the place of sale and delivery governs the validity of the sale.

3.   Where different sales are made, the illegality of one or more will not invalidate those which were legal.

4.   Where several notes are given in settlement of an account embracing sales, one or more of which were illegal, the seller, in an action on one of the notes, may appropriate to the illegal sales such of the other notes as are sufficient to cover them.

5.   The individual members of a partnership who continue to use the partnership sign, and give no notice of dissolution, are liable for debts contracted in the partnership name.

[Opinion filed May 28, 1890.]

APPEAL from the Circuit Court of Warren County; the Hon. JOHN J. GLENN, Judge, presiding.

Frohlich, Gardt & Co v. Alexander.

Messrs. M. J. DAUGHERTY and C. C. CRAIG, for appellants.

Mr. I. M. KIRKPATRICK, for appellees.

UPTON, P. J. This was an action on a promissory note signed "E. D. Alexander & Co.," a firm theretofore composed of John E. Alexander and E. D. Alexander, who, for some years prior to the execution of the note, had been engaged in business as druggists in the village of Alexis, in Warren county. The note was made payable to appellants, which latter firm, at the time of its execution and for several years prior thereto, had been engaged in business at Galesburg in the purchase and sale of wines, whiskies and cigars, at wholesale.

In 1882 appellees opened an account with appellants in the purchase of alcohol, whiskies, wines and cigars, at wholesale, for use and re-sale in their drug store, the appellees hauling the goods so purchased across the country to their place of business in Alexis.

The purchases and sales continued until 1886. These purchases and sales were made, and the goods sold were mostly, if not wholly, delivered to appellees or their agents and carriers in Galesburg, at appellants' store or place of business, and were there sold mostly upon credit.

E. D. Alexander was the active member of appellees' firm. In September, 1886, the appellants presented their account for goods so sold to E. D. Alexander, and it was settled by appellants accepting three notes, signed by E. D. Alexander in appellees' firm name of "E. D. Alexander & Co.," one of which aforesaid notes for the sum of $100, with interest at eight per cent per annum, payable in thirty days after date, and dated September 7, 1886, not being paid at maturity, a suit was instituted before a justice of the peace, from whose judgment an appeal was taken to the Circuit Court of Warren County, in which last named court a jury was waived and the issues submitted to the court, who rendered a judgment for the appellees, from which judgment this further appeal was taken, and that appeal is now before us. The several points

interposed in defense by the appellees in the courts below, and here again insisted upon, are :

1.   Illegality of contract and consideration of the note.

2.   No joint liability of appellees, defendants below.

First.   It is established and conceded that the village of Alexis is a municipality in the county of Warren, Illinois, and by its ordinances, in force during the time of the making sales and delivering of the liquors so sold to the appellees by the appellants, the sale, barter or exchange thereof was prohibited within that municipality without a license for that purpose first had and obtained.   It is shown by the evidence of E. D. Alexander that his firm never obtained a license for the sale of liquors from the village municipality.   He further stated that he, if not the firm of appellees, did make sale of portions of the liquors so purchased of the appellants, in violation of the ordinances of that village.   But it does not appear that the appellants, or either of the members of that firm, knew or were informed of the fact of such illegal sales, actual or contemplated.

From these facts it is insisted by the appellees that the consideration of the note in suit was the illegal sale of liquors by the appellants to the appellees, and that such sale was in violation of law and precludes appellants from recovering the price of the liquors so sold.   In the support and refutation of this contention we are referred to a number of adjudicated cases from courts of the highest respectability upon both sides of the question, but which, in the view we take of the case at bar, will not require extended examination.   It is sufficient to say the questions sought to be raised in this case have been much mooted in the courts of England, and in this country as well, and there has heretofore been, and to some extent there still exists, a decided conflict in the opinions of the courts of last resort in this country thereon, while in England the modern doctrine appears to be that " the sale of a thing, in itself an innocent and proper article of commerce, is void when the vendor sells it knowing that it is intended to be used for an immoral or illegal purpose," which has been followed in this country in Hooker v. De Ealors, 28 Ohio St. 251, in

Suit v. Marshall, 113 Mass. 391, in Wilson v. Stratton, 47 Me. 120, in Tollman v. Johnson, 43 Iowa, 127, in Hanauer v. Doane, 12 Wall. 342, and perhaps some others, following Langton v. Hughes, 1 M. & S. 593, determined by Lord Ellenborough in June, 1813.

In November, 1813, in Hodgson v. Temple, reported in 5 Taunt. 181, before Sir James Mansfield, in an action for the price of spirits sold with the knowledge that the defendant intended to use the spirits illegally, a verdict being rendered for the plaintiff, a motion for a new trial at *nisi prius* was refused by the court, Chief Justice Mansfield saying : " This would be carrying the law much further than it has ever yet been carried.   The mere selling of goods, knowing that the buyer will make an illegal use of them, is not sufficient to deprive the vendor of his just right of payment therefor, but to effect that it is necessary that the vendor should be a sharer in the illegal transaction."

The American doctrine generally received, and as we apprehend, based upon the clear weight of authority in this country is, that " the mere knowledge of the seller that the buyer intends an unlawful use of the goods sold, will not avoid the contract *between the parties*.   But a purchase made with intent to use the property to commit a felony, or crime, involving great moral turpitude, if known to the seller, will prevent a recovery of the price."

This, in part, is based upon the decision of Hodgson v. Temple, 5 Taunt. 181, *supra,* and has been followed in this country in Armstrong v. Fohr, 11 Wheat. (U. S.) 258; Wallace v. Sark, 12 S. C. 576 ; Hill v. Spear, 50 N. H. 253; Tracy v. Talmadge, 14 N. Y. 162 ; Webber v. Donelly, 133 Mich. 469 ; Bicket v. Sheets, 24 Ind. 1 ; Stute v. Curle, 4 Dana, 381; Cheeny v. Duke, 10 Gill & John. 11 ; Harris v. Runnels, 12 How. 79 ; Michael v. Bacon, 49 Mo.; Gaylord v. Soragen, 32 Vt. 110 ; Annfield v. Tate, 7 Iredell's L., 258 ; Hodges v. Wallace, 2 Busk. 412 ; Bishop v. Honey, 34 Texas, 245; McKinney v. Andrews, 41 Texas, 363, and many other cases. Benjamin on Sales of Personal Property, 4th American edition, Vol. 2, Sec. 790, 791, note 6.   In volume 9, page 910, note

4, Encyclopædia of Law, the rule is thus stated: "As a *rule*, the vendor of goods will not be deprived of his right of payment therefor, when he *knows* that the buyer intends to use them illegally, unless it be made a part of the contract of sale that the property shall be, in fact, used for an unlawful purpose, or unless the vendor does something beyond making the sale in aid of furtherance of the unlawful design, or unless the illegal act contemplated is such that no man having a knowledge of the design can remain neutral without being, in a just sense, a criminal himself." See, also, Hilliard on Sales, 3d edition, top paging, 489. Manifestly, then, the case at bar can not come within the rule as claimed by the appellees, taken in its most favorable acceptation. The element of "*guilty knowledge*" is wholly wanting in the case at bar, which must be established by the appellees to bring the case within the ruling in Langton v. Hughes, *supra*, and kindred cases.

It is also contended with great earnestness that the doctrine of Langton v. Hughes has been followed in this State in Lewis v. Headley, 36 Ill. 433, and was cited with approval in Cicero Mut. H. A. Co. v. Rosenthal, 55 Ill. 85, which latter case has been cited and approved in Roth v. Roth, 104 Ill. 35, and in Penn v. Bornman, 102 Ill. 523. It is, we think, clear, in view of the whole evidence, that these sales were made in Galesburg and the goods were there delivered, and no part thereof was delivered or contracted to be delivered in Alexis; that the sale in the quantities sold by the appellants at the time and place of sale, was authorized by law; that appellants were in no manner informed that appellees were not authorized to make re-sale or use thereof, in their business as druggists in Alexis, or that the appellees intended to make unlawful use of the same or of any part thereof. Nor can it in any legal sense be said that the contract of sale or the delivery of the goods was in whole or in part to be *performed* in the village of Alexis, or that the ordinances of that village were in contemplation of either of the parties at the time of its execution, and hence were in no sense contravened in making the sale of the liquors in question in Galesburg. Brechwald v. The People, 21 App. Ct. Reps. 213.

In the case last cited it was held that the delivery to a carrier is a delivery to the consignee, and completes the sale, which is elementary, and the law of the place of sale and delivery would govern its validity. To the same effect are the following cases: Hill v. Spear, 50 N. H. 253; Finch v. Mansfield, 97 Mass. 89; Parsons on Contracts, Vol. 2, page 586.

Mr. Justice Clifford said : " The general rule which must govern this case is that it is no defense that the vendor knew that the goods purchased were to be sold in another jurisdiction in violation of law in that jurisdiction, unless it was a part of the contract that they should be so sold." Tracy v. Talmadge, *supra;* McIntyre v. Parke, 3d Met. 207; Shotwell v. Hughes, 1 Curtis' Cir. Ct. R. 245 ; Hill v. Spear, *supra.*

That the municipal laws and ordinances of the village of Alexis are foreign to the city of Galesburg, is regarded as too evident to justify discussion ; and, if it be claimed that the sale was illegal in the city of Galesburg under its municipal regulations, it was for the appellees, who were asserting its illegality, to establish the fact, which is not attempted, and hence the presumption of law attaches, of its legality.

It is therefore unnecessary to inquire whether the one rule or the other, as contended for, has been adopted in this State; the case at bar requires the support of neither to sustain appellants' right of recovery, nor is the sale in question, under the evidence, invalid, under either rule stated.

It is claimed by the appellees that one barrel of whisky sold in 1885, after most of the goods were sold and delivered, was taken into the village of Alexis in the night-time (covered up in some way) by one Thomas, appellees' carrier, in violation of ordinances of that village.

It is also claimed that appellants furnished a box which was used by appellees' carrier to cover the barrel of whisky when taken from appellants' place of business in Galesburg.

There is no evidence tending to prove that any portion of the packages of whisky in box or barrel, so covered, was sold or used illegally, or was purchased with that intent by appellees, or that any part of the consideration of the note in

suit was for the agreed purchase price thereof. Besides, as was said by Lord Tenterden, in Croakshank v. Rose, 5 C. & P 19, which was a case like the one at bar, "It might be included in the other notes, and the seller had the right to appropriate the others to all the illegal charges in the account, which others were more than sufficient to cover the illegal sales, if those were illegal, as claimed."

It may be said that the furnishing box or cover for the barrel affords a strong presumption of guilty knowledge in the appellants of the illegal intent on the part of the appellees, but the facts and circumstances under which the box or covering was furnished—which are not shown by the evidence—might entirely rebut that presumption, such as holding the goods in place in the wagon in transportation, furnishing greater convenience of carriage to the carrier, or other personal choice, necessity or convenience of the carrier.

All that is claimed by appellees might have been done and still be consistent with entire good faith on the part of appellants in the sale.

We are not prepared to convict the appellants of an illegal act, or invalidate contracts apparently valid, upon presumptions of fact merely.

The sales in question were separate and independent transactions, and if it were shown that one or more were illegal (which we are not prepared to concede), that sale would not invalidate those sales which were legal.

Second. It is claimed that John E. Alexander, one of the appellees, had sold out his interest in the drug store and business at Alexis to his son, E. D. Alexander, on the 1st of August, 1884.

It is shown by the evidence that the business at the drug store was conducted in the name of the old firm of E. D. Alexander & Co. long after the 1st of August, 1884, and after the execution of the note in question the same sign of "E. D. Alexander & Co.," still remained over the door of the drug store as it had before that time, and no public notice had been given of the dissolution of the firm, prior to the execution of the note in suit.

It is clear under these facts, we think, that the appellees' second point can not be sustained. Southern v. Grim, 67 Ill. 106; Holtgrave v. Wintker, 85 Ill. 470; Smith v. Vanderburg, 46 Ill. 34; Smith v. Knight, 71 Ill. 198. John E. Alexander testified that he informed appellants personally of the dissolution of the firm and the sale of his interest therein to E. D. Alexander some time in the year 1884. This is expressly and positively denied by appellants, severally and personally. Conceding, however, that the notice was given as claimed by appellee John E. Alexander, it is certain that could not relieve him from liability of payment for that portion of appellants' demand which had accrued during the time that he was a member of appellees' firm, which confessedly would far exceed the amount of the note in suit.

We fail to perceive how the points contended for by the appellee can be made availing under the evidence in this case.

The evidence in the record before us we have carefully examined, as well as the findings of the court thereon, and the holdings upon the several propositions of law submitted, and it is manifest abundantly therefrom that the judgment of the court should have been for the appellants.

As to the propositions of law submitted on the part of appellants (plaintiffs below), we think the court should have held as requested in Nos. 2, 4 and 5. We think the holdings of the court upon the other propositions submitted, taken as a series, were correct. For the reasons stated the judgment of the Circuit Court is reversed and the cause remanded for further proceedings, as the parties may be advised, not inconsistent with the views hereinbefore expressed.

*Judgment reversed and cause remanded.*