# LADY ENSLEY COAL, IRON AND RAILROAD COMPANY

## V.

## GILBERT B. SHAW, ASSIGNEE, ET AL.

*Insolvency—Goods Stopped in Transit—Replevin.*

1. Where a vendee becomes insolvent while goods sold to him are in transit, the vendor may exercise the right of stoppage *in transitu,* and regain possession thereof.

2. Where goods were sold in such case on credit, the delivery thereof to the carrier for conveyance to the vendee is a delivery to the latter, and the title passes to him.

3. The exercise of such right by the vendor does not divest the vendee of his property, but merely changes the possession back to the vendor, leaving title in the vendee and reinstating the vendor in his lien; and having thus obtained possession the vendor has his lien as it would have existed in case of a sale of the specific property on credit, and the occurrence of the insolvency of the vendee before delivery, and the vendor has the right to hold the property until the assignee of the insolvent estate shall pay for it.

4. The insolvency of a vendee creates such a presumption against his

liability to perform, as to relieve the vendor from taking the initiative of proving an offer to deliver and a demand of payment.

5.   The question of absolute title is not always involved in a replevin suit.  A special interest in the iron involved, entitling plaintiff to its present possession, was sufficient to sustain the action of replevin brought by it.

6.   This court holds that plaintiff has a lien on the property stopped in transit, and is entitled to have its claim allowed for the full amount.

[Opinion filed January 7, 1893.]

APPEAL from the County Court of Cook County; the Hon. FRANK SCALES, Judge, presiding.

Messrs. WILLITS, ROBBINS & CASE, for appellant.

Messrs. MORAN, KRAUS, MAYER & STEIN, for appellees.

MR. JUSTICE SHEPARD.   The hearing of this cause in the County Court was upon a stipulation of facts made for the purpose of the trial, as follows :

" It is stipulated that the entire claim of the Lady Ensley Coal, Iron & Railroad Company against the National Forge & Iron Works is $45,148.08, which is the price at which certain iron was sold and consigned by the Lady Ensley Company to the National Forge & Iron Works.   All of this iron was received by the consignee except forty carloads, of the value of $7,961.50, which was stopped *in transitu* by the Lady Ensley Company, the claimant herein, and for a portion of which, namely, thirty-three carloads, a replevin suit was brought and the iron was taken on a writ, and at the trial the property was found to be in the plaintiff in the replevin suit.   The only question litigated in that suit was as to whether the notice of stoppage *in transitu* was properly served and whether the transit had ended until after this notice was served.   The Lady Ensley Company claims the right to have the full amount of the claim existing at the time of the assignment, and the only question in dispute here is whether it must reduce this claim by the value of the iron taken back under the notice of

stoppage *in transitu.* The claim now under discussion was filed in these proceedings after the institution of the replevin suits and after the property covered thereby had been returned to the claimant. And in both said replevin suits judgment has been rendered for the claimant."

Which was all the evidence offered or received upon the hearing of said cause.

As we understand the case, the appellant sold and consigned to the National Forge & Iron Company, certain pig iron of the value of $45,148.08.

All of the iron so sold and consigned had been completely delivered into the possession of the vendee, except forty carloads, of the value of $7,961.50, at the time when the assignment of the National Forge & Iron Company to the appellee Shaw, for the benefit of its creditors, took place.

These forty carloads were stopped *in transitu* by appellant, and replevin suits for the same successfully prosecuted by appellant to judgments in its favor. While the replevin suits were pending, and after the forty carloads of iron had been taken upon the replevin writs, and returned to appellant, the appellant filed its claim in the County Court against the insolvent Forge & Iron Company, for the full amount of $45,148.08, which was the value of all the iron that had been sold and consigned, including the value of the part replevied.

The only question appearing to be in dispute, is whether the appellant is entitled to the allowance of its claim for the purchase price of the entire quantity of iron, viz., $45,148.08, or whether the claim shall be allowed by the County Court for only so much as remains of the claim after deducting the value of the iron replevied.

The County Court took the latter view, and allowed the claim for the reduced amount of $37,186.58, and from that judgment appellant prosecutes this appeal.

It is conceded that, the vendee having become insolvent while the forty carloads of iron were in the hands of the carrier, the right of the appellant vendor to exercise a stoppage *in transitu* and thereby regain possession, was perfect. The

law on that point is clear. But as to the effect of such action, and the subsequent judgments in favor of the appellant in the replevin suits, counsel widely differ.

The stipulation of facts does not disclose it, but the fair presumption is that the iron was sold upon credit. That being so, the delivery of the iron to the possession of the carrier for conveyance to the vendee, was a delivery to the latter, and the title passed thereby to the vendee. Ward v. Taylor, 56 Ill. 494.

Both possession and title were then gone from the vendor, and with the departing of his possession and title all lien that he might have had, under some circumstances, was also gone.

The right to regain possession of the iron by the exercise of stoppage *in transitu*, so long as it remained in the hands of the carrier, in case of the insolvency of the vendee, still existed, however, in favor of the vendor.

The exercise of that right by the vendor, did not, as we understand the law, operate to divest the vendee of its property in the iron, but merely changed the possession back again to the vendor, leaving title in the vendee, and reinstating the vendor in his lien. Benjamin on Sales, Secs. 859 and 867; 1 Jones on Liens, Sec. 861.

Possession thus regained, the vendor had its lien on the iron, as it would have existed in case of a sale of the specific iron on credit, and the occurrence of the insolvency of the vendee, before delivery. Arnold v. Delano, 4 Cush. 33; 1 Jones on Liens, Chaps. 17 and 18; Babcock v. Bonnell, 80 N. Y. 244.

The appellant, vendor, was then in a condition to hold the iron until the assignee should pay for it, precisely as the vendee would have had to do.

If the assignee should think such benefits would arise to the insolvent estate as would justify a completion of the contract, it would be easy for him, upon a proper showing, to procure authority to do so from the County Court; but in the absence of something showing his intention or desire to perform the contract for the benefit of the estate, we think it is altogether unnecessary for the vendor to make a tender

of the iron before being entitled to an allowance of his claim.

The presumptions are powerful that an insolvent estate is not prepared to go on performing its contracts, and we are of opinion that it is enough, if it does not appear but that the vendor is willing and ready to perform if demanded so to do. There is nothing in this record to show the contrary. It does not appear that the vendor has sold the iron, or done anything more than assert his right to possession of the iron and hold it by virtue of his lien. It would, therefore, in our opinion, be unnecessary to require appellant to negative the strong presumption that the assignee will not carry out the contract.

That the vendor should be ready to perform on his part, may be conceded, but we think that the insolvency of a vendee creates such a presumption against his ability to perform, as to relieve the other party from taking the initiative of proving an offer to deliver, and a demand of payment. It was for the assignee of the insolvent vendee to first overcome the presumptions against him because of his condition.

That the recovery in the replevin suits did not revest the absolute ownership in the iron in the appellant, so as to extinguish the lien, and thereby satisfy the claim of the appellant to the extent of the value of the iron recovered, is, we think, clear. The question of absolute title is not always involved in a replevin suit. A special interest in the iron entitling appellant to its present possession, was sufficient to sustain the action. Cleaves v. Herbert, 61 Ill. 126.

From the whole record we are satisfied that the appellant has a lien upon the iron stopped in transit, and is entitled to have its claim allowed in the County Court for the full amount.

Of course, satisfaction of the claim can be had but once, and when dividends on the whole claim shall have paid the amount of the claim, less the value of the iron stopped *in transitu*, further dividends on the claim must cease. By so doing no hardship will be done to anybody, and the requirements of the assignment act that all debts shall be paid *pro rata*, will be performed.

We regard this question as settled in In re Bates, 118 Ill. 524, and by the decisions of this court in Jennings Trust Co. v. The Merchants Natl. Bank, 44 Ill. App. 295, and Furness v. Union National Bank, 46 Ill. App. 522.

The cause will be reversed with directions to the County Court to allow the claim for the full amount of $45,148.08.

*Reversed with directions.*