## Des Moines N. & W. Ry. Co. v. Block-Pollak Iron Co.

1. CONSTRUCTION OF CONTRACTS—*Acts and Statements of the Parties.*—The acts and statements of the parties so far as they are indicative of the construction which they themselves place upon their contracts may be resorted to for the purpose of determining the true meaning of written agreements; and where the contract is understood by one of the parties in a certain sense with the knowledge and assent of the other party, then it is to be so construed, provided it can be done without making a new contract for the parties.

2. SALES—*Delivery to a Common Carrier for Conveyance to the Purchaser.*—The delivery of goods to a common carrier for conveyance to the purchaser or to a place by him designated is as a general rule a delivery to the purchaser.

Assumpsit.—Error to the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1899. Reversed, and judgment entered in this court for plaintiff in error. Opinion filed December 19, 1899. Opinion corrected and refiled March 13, 1900. Mr. Presiding Justice HORTON does not concur.

80    APPELLATE COURTS OF ILLINOIS.

VOL. 88.] Des Moines N. & W. Ry. Co. v. Block-Pollak Iron Co.

**Statement.**—Suit was brought in the court below by the plaintiff in error against the defendant in error, to recover damages for the failure of defendant to receive and pay for nine cars of old railroad rails sold by plaintiff to defendant. Trial by jury was waived and the cause submitted to the court; the court found the issues for the defendant and rendered judgment against the plaintiff, for costs, to reverse which judgment the plaintiff prosecuted this writ of error.

The contract between the parties is as follows, viz.:

"This memorandum of agreement, made the 15th day of January, 1892, between the Block-Pollak Iron Co. and the Des Moines, Northern & Western Railway Co., Witnesseth:

"(1)  The D. M. N. & W. Ry. Co., agree to sell to the Block-Pollak Iron Co. the light rail, splices, bolts and spikes which they are now taking up between the points of Malmo and Eads, Iowa, estimated to be 1,500 gross tons, at $21.75 per gross, f. o. b. cars, the Block-Pollak Iron Company's yard at Fifty-second and Wallace streets, Chicago.

"(2)  It is further agreed on the part of the railway company that the rails and splices will be loaded separately, and that the nuts and spikes will be loaded on cars together.

"(3)  It is further agreed that this material will be shipped, one-half in the month of February and the balance in the month of March, 1892.

"(4)  It is further agreed by the parties that the rail, splices, bolts and spikes between Eads and a point south of Farlin, estimated at 500 tons, will also be taken by the Block-Pollak Iron Company at $21.75 f. o. b. Chicago, under the same conditions as the 1,500 tons above mentioned, with the understanding that the railway company will not be required to furnish the material between Eads and a point south of Farlin until they receive from the Illinois Steel Company the new rail to replace the same, and that the railway company will also be given reasonable length of time to relay the rail and to pick up and ship the scrap.

"(5)  It is further agreed that in no event will the railway company be compelled to ship the scrap last mentioned until the months of April or May at their option. The Block-Pollak Iron Co. agree on their part to receive this rail at any time during the months mentioned for delivery, and to pay for the same on sight draft, the B-L attached.

"(6)  It is understood that the splices, bolts, nuts and

spikes herein referred to, is the accumulation from the rail, which is herein sold to the Block-Pollak Iron Co., and that the Block-Pollak Iron Co. will not be required to take any larger proportion of small track scrap than comes from this rail."

The figures in the copy at the headings of sections do not appear in the original; they are inserted for the sake of convenience in reference.

On May 31, 1892, the plaintiff shipped the nine cars of rails in question from the line of plaintiff's road at Fonda, Iowa, consigned to defendant in error at Springfield, Illinois.

Shortly after said contract was made the place of delivery was by agreement changed from Chicago to Springfield. All the iron contracted to be sold was delivered and paid for except the 139 tons in question, which is a part of the 500 tons mentioned in section 4 of said contract, and which arrived at Springfield about June 15th. Defendant in error declined to accept said iron when tendered at Springfield. Plaintiff in error resold it for $591.66 less than the contract price, and seeks to recover that sum from defendant in error in this case.

McCLELLAN & SPENCER, attorneys for plaintiff in error.

WILLARD & EVANS, attorneys for defendant in error.

MR. JUSTICE FREEMAN delivered the opinion of the court.

The only question presented for determination is whether, under the provisions of the contract between the parties, defendant in error was bound to receive and pay for 139 tons of scrap iron, which was shipped to it by plaintiff in error May 31, 1892, but did not reach its destination at Springfield until some time in June.

There is no material contention over the facts. The controversy arises over that clause of the contract which provides that in no event will the railway company (plaintiff in error) be compelled to ship said scrap iron " until the months of April or May at their option," and " The Block-Pollak Iron Co. agree on their part to receive this rail at

82        APPELLATE COURTS OF ILLINOIS.

VOL. 88.] Des Moines N. & W. Ry. Co. v. Block-Pollak Iron Co.

any time during the months mentioned for delivery, and to pay for the same on sight draft" with bill of lading attached. Defendant in error claims that its obligation to receive the iron terminated May 31st; and that as it was not delivered at Springfield upon that date, liability under the contract thereupon terminated.

The argument of defendant's counsel is that shipment "was not delivery at Springfield, and until the iron was actually in Springfield, the carrier was plaintiff's, not defendant's, agent." Stress is laid on the provision that the scrap iron "will be taken by the Block-Pollak Iron Company at $21.75 f. o. b. Chicago," (changed to Springfield by subsequent agreement), which appellee seeks to have construed to mean that the iron was to be "taken" only at Springfield; whereas it is, we think, evident that said clause relates not to the place of delivery but to the terms of purchase and sale. These terms are, that the buyer was to pay $21.75 per ton for the iron, the seller to pay the charges of the carrier and all other expenses as far as Springfield. As we read the contract, it does not, by its terms, provide that the delivery of the iron shall take place at Springfield.

The intention of the parties as to time and manner of delivery must therefore be gathered wholly from the language of that section of the contract which provides that the railway company shall not be compelled to "ship" the scrap iron until the months of April and May, at their option, and that the defendant in error will receive it at any time during "the months mentioned for delivery." The months mentioned are April and May, and they are the months mentioned for shipment as well as delivery. Plaintiff in error had the whole of that period, viz., the months of April and May, in which to "ship" and by the language employed, shipment and delivery seem to have been used as describing one and the same act. In this the words used accord with the principle of law applicable. The delivery of goods to a common carrier for conveyance to the purchaser or to a place by him designated is, as a general rule, a delivery to the purchaser. Brechwald v. People, 21 Ill.

App. 213 (215); Frohlich v. Alexander, 36 Ill. App. 428 (433); Lady Ensley Coal, etc., Co. v. Shaw, 46 Ill. App. 603 (606); Ward v. Taylor, 56 Ill. 494; Stafford v. Walter, 67 Ill. 83 (86).

The receipt, May 31st, by the carrier, of the iron, duly consigned to defendant in error, was a delivery to said defendant in accordance with the contract.

It is said by defendant's counsel, " It seems plain from a fair reading of the contract that the parties did not look upon the act of shipment and the act of receipt or delivery as constituting the same transaction." This view is not sustained by the evidence. A letter from defendant dated May 31, 1892, addressed to the superintendent of plaintiff in error at Des Moines, Iowa, was introduced, which, after stating that there was a shortage in the previous shipment and requesting a check therefor, or instructions " to deduct this amount in remitting to you," concludes as follows :

" As our contract is expiring to-day, we presume that you have completed shipments; at any rate we beg to say that we will not receive any more rails or scrap which has not been shipped to date. Yours truly,

BLOCK-POLLAK IRON COMPANY."

Here was an express statement by the defendant that it would not receive rails or scrap " which has not been shipped to date," clearly implying that it expected to receive under the contract about to expire, whatever had been so shipped. This indicates that the defendant regarded delivery to the carrier by shipment made on that date as a delivery to and receipt by itself in accordance with the obligation of the contract. It was defendant's understanding of the agreement. The acts and statements of the parties, so far as they are indicative of the construction which they themselves place upon their contracts, may be resorted to for the purpose of determining the true meaning of written agreements; and where the contract is understood by one of the parties in a certain sense with the knowledge and assent of the other party, then the undertaking is to be so construed, provided it can be done without

84    APPELLATE COURTS OF ILLINOIS.

VOL. 88.] Des Moines N. & W. Ry. Co. v. Block-Pollak Iron Co.

making a new contract for the parties. Leavers v. Cleary, 75 Ill. 349; Street v. Chicago Wharfing Co., 157 Ill. 605 (614), and cases there cited; Vermont Street M. E. Church v. Brose, 104 Ill. 206 (212). The construction which defendant in error thus placed upon that part of the contract under consideration is in accordance with the true meaning and legal effect of the phraseology therein employed. The fact that the letter in question was not received until after the shipment of May 31st, is not material. It is the fact that it expresses the defendant's view of the meaning of the contract that is important.

Defendant in error positively declined to accept the nine car loads of rails in controversy, and the same were subsequently sold about the middle of June at Springfield for $17.50 per gross ton. The contract price was $21.75, a difference of $4.25 per gross ton. The net weight of the nine car loads was 139 480-2240 gross tons, the loss upon which to plaintiff in error at $4.25 per ton, amounted to $592.57.

There is no dispute as to these facts, and plaintiff in error is entitled to recover the sum of $592.57, with interest thereon from June 15, 1892, the date of the sale, at the rate of five per cent per annum. The cause was heard in the Superior Court without the intervention of a jury, and the decision turned upon the construction of the contract. No good purpose can be subserved by remanding the case to await its term upon a new calendar in the trial court, when the facts are not in dispute. The ends of justice will be best promoted by entering final judgment here.

The judgment of the Superior Court will therefore be reversed and judgment entered in this court in favor of the plaintiff in error.

MR. PRESIDING JUSTICE HORTON. I can not concur in the above opinion, and file the original opinion filed in this case as presenting my views, viz.:

The decision of this case turns upon the construction to be given to section 5 of the contract. On the part of

plaintiff in error it is contended that shipment at any time prior to June 1st is in apt time under the terms of said contract, and that defendant in error should have accepted and paid for the iron upon its arrival and tender in Springfield June 15th.

On the part of defendant in error it is contended that unless the iron was delivered or tendered to it, at Springfield, not later than the last day of May, it could not be required to accept the same under said contract.

There is no material contest as to any question of fact.

By the terms of said contract plaintiff in error was not required to ship the iron in question until " the months of April or May at their (its) option." Defendant in error agreed to receive this iron " at any time during the months mentioned for delivery."

Counsel for plaintiff in error in their printed argument discuss the meaning of the first sentence in section 5 of said contract, which relates only to the shipping of the iron by plaintiff in error, and entirely ignore the other sentence in said section which relates to receiving the iron by defendant in error. Where there is apparent conflict between different parts of a contract, the meaning can not be ascertained by considering one part only. Such contract must be construed upon the consideration of all its provisions, and effect be given to all if that be practicable.

The iron was to be delivered at Springfield, Illinois. Putting it in the hands of a common carrier at Fonda, Iowa, was not such a delivery as the contract requires. That was shipment, but not delivery.

Said contract is for the sale of 2,000 tons of iron. Fifteen hundred tons was to be shipped, one-half in February and one-half in March, 1892. The 500 tons is the estimated amount of scrap iron in a railroad between certain points in Iowa named in the contract. But it was provided that the plaintiff in error was not to be required to furnish this part of the scrap iron until it received new rails to replace the same, and should have a reasonable length of time to lay the new rails, and " pick up and ship the scrap." Under

86     APPELLATE COURTS OF ILLINOIS.

VOL. 88.] Des Moines N. & W. Ry. Co. v. Block-Pollak Iron Co.

those provisions of the contract the time of shipment and of delivery at Springfield, was indefinite and uncertain. It seems that to make it more definite and fix some limit of time said section 5 was then added.

By said section 5 the plaintiff in error says in effect that it being uncertain as to just the date when the new rail will be received, and the scrap picked up and shipped, we shall not be compelled to ship it until April or May. To this defendant in error says in the last sentence of section 5, that it will receive such iron " at any time during the months mentioned for delivery." There is no place of delivery mentioned except Springfield. It does not say during the months mentioned for shipment, but during the months mentioned for delivery.

The last part of said section 5 must have been put there by the parties for some purpose. It must be presumed that they intended it to mean something. If it does not limit the time of delivery at Chicago (changed by later agreement to Springfield) it does not mean anything. Defendant in error had, by section 4, agreed to take the scrap at a price fixed. That is all defendant in error does by the last part of said section 5, unless the time of delivery at Chicago (Springfield) is thereby limited.

If the construction of this provision of the contract contended for by plaintiff in error be adopted, the court would entirely eliminate from the contract by construction, that portion of section 5 which relates to delivery. Under that construction, the legal effect of the contract would be precisely the same as it would be if the parties had not inserted that portion of section 5 which relates to delivery. It is contrary to all rules of construction to so interpret a contract as to, in effect, eliminate or strike out certain positive provisions inserted by the parties, if there be any other reasonable construction which may be adopted. What did the parties to this contract mean by said section 5 when it is considered as a whole? That is the question for the court.

A letter was offered in evidence, to which is appended the name of defendant in error corporation. It does not appear who wrote or appended the name of defendant in

error to that letter. It is dated and presumably written at Chicago, and addressed to the superintendent of plaintiff in error at Des Moines, Iowa. The letter assumes that plaintiff in error has completed shipments upon the contract expiring that day (May 31st), and states that defendant in error will not receive any more iron " which (in the words of the latter) has not been shipped to date."

That letter could not have been received by the superintendent, to whom it was addressed, until after the iron in question had been shipped. That shipment was not, therefore, induced or made by plaintiff in error because of said letter. The acts and doings of the parties to said contract were not in any way or manner changed or affected by said letter. It was, at most, in its legal effect in this case, a statement by the writer as to his interpretation of said contract. Who the writer was, or by what authority he wrote, does not appear. I can not, therefore, give to that letter any controlling effect in the construction to be given to said contract.

I am of the opinion that said contract limits the time of delivery, "f. o. b. at Chicago" (Springfield) to a time not later than the last day of May.

The alleged error in refusing to hold certain propositions of law presented to the court by plaintiff in error all turn upon the question of the time of delivery considered above. As stated, counsel for plaintiff in error has argued as to the meaning of the first part only of said section 5. No authority is cited bearing upon the construction of said section or said contract as a whole.